75 So.2d 96

**Melvin SPARKS**

v.

**STATE.**

**6 Div. 504.**

Court of Appeals of Alabama.

March 3, 1953.

Rehearing Denied March 31, 1953.

Affirmed after Remandment May 11, 1954.

Rehearing Denied June 22, 1954.

Jack H. McGuire, Tuscaloosa, for appellant.

CARR, Presiding Judge.

This appeal comes to this court from a judgment of conviction for assault with intent to murder. The person alleged to have been assaulted is Joe Holly.

The locale of the offense is a night spot in Tuscaloosa County, Alabama. It is apparent that excessive consumption of intoxicating liquors played an influencing role in the circumstances incident to the affray.

A large group of people was present and many witnesses were examined at the trial below.

Stated briefly the salient facts are:

The assault had its inception on the inside of the building. There is considerable conflict in the testimony relating to what did actually there occur.

The parties proceeded to the grounds just outside the building, and there appellant secured a pistol from his parked automobile and fired the gun three times. The prime, essential dispute in the evidence is whether or not the accused shot at Holly or fired the gun upward into the air, as he claimed.

In this aspect a State's witness testified:

"Q. You didn't see him actually pointing that gun at Joe Holly, did you? A. Sure you could see him pointing the gun at him."

Holly's wife testified:

"Q. And the last shot was fired at Joe as he was running behind the building? A. That's right.

"Q. And you didn't see which direction the gun was pointing? A. It was shooting

Si Garrett,, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

the first time I saw it he shot at us, that is when I thought it hit Joe.

"Q. Well your husband wasn't shot, was he? A. No, sir."

Joe Holly answered the following question in the affirmative: "You saw him actually shoot it at you?"

The appellant fired a 38 caliber Smith and Wesson pistol and he was standing fairly close to Holly at the time. The distance was estimated at about eight feet when the first shot was fired. According to the State's evidence Holly ran, and the distance was slightly increased at the time of the last firing.

Appellant urges in brief that on the basis of these facts the court should have given the general affirmative charge in defendant's behalf.

■ In approaching this review we must accept the State's evidence as true. Jones v. State, 33 Ala.App. 451, 34 So.2d 483; Maxwell v. State, 34 Ala.App. 653, 43 So. 2d 323; McGee v. State, Ala.App., 55 So. 2d 223.

■ The prosecution was not required to prove that the accused had the specific intent to take the life of Holly. If he intended to do him grievous bodily harm and this intent was accompanied with present ability to effect it, this would constitute the offense charged in the indictment. Of course, the assault must have been committed without legal excuse or justification. Smith v. State, 88 Ala. 23, 7 So. 103.

"An assault with murderous intent, having the adaptation of apparent means to that end, is the evil aimed at by the statute, and one may transgress the statute by merely aiming a loaded gun at another, having a murderous intent." Dobbins v. State, 15 Ala.App. 166, 72 So. 692, 693.

See also, Newton v. State, 92 Ala. 33, 9 So. 404; Crawford v. State, 86 Ala. 16, 5 So. 651; Christian v. State, 133 Ala. 109, 32 So. 64.

■ We find no difficulty in concluding that the defendant was not due the general affirmative charge.

We hold also that the verdict was not contrary to the great weight of the evidence.

Our review of many of the court's rulings incident to the introduction of the evidence comes under the influence of the following rules:

The answer to the question was not harmful to appellant. Mooneyham v. State, 35 Ala.App. 576, 50 So.2d 792; Brown v. State 33 Ala.App. 152, 31 So.2d 652.

Answer to question was given before objections were interposed. Bryant v. State, Ala.App., 52 So.2d 403; Holmes v. State, 35 Ala.App. 585, 50 So.2d 800.

No exceptions were reserved to ruling of the court. Tucker v. State, Ala.App., 55 So.2d 365; Bryant v. State, supra.

Wide latitude on cross-examination was not abused. Peterson v. State, 32 Ala.App. 439, 27 So.2d 27; Broadway v. State, 35 Ala.App. 86, 45 So.2d 480.

■ Over the general objections of appellant's counsel the court permitted Joe Holly's wife to testify that, after the difficulty and after the accused had left the scene, her husband went to the telephone in the building and tried to find "Mr. Ward's" phone number and he finally stated that "he would go home if we would go by and see Mr. Ward on the way home."

This was not a part of the res gestae and should not have been admitted in evidence.

The record does not disclose the identity of "Mr. Ward" or what Holly wanted to say to him.

We cannot see how the rights of the accused were in any way jeopardized by the introduction of this scant, disconnected testimony. Rules of Practice in Supreme Court, rule 45, Code 1940, Tit. 7 Appendix.

■ Appellant's counsel attempted to lay a predicate by asking Holly if he did not make a statement to Mr. Thrower at the

home of the witness. The predicate was not complete. The time was not indicated, nor did it include the inquiry if other parties were present. The court did not err in sustaining the State's objection to the question. Brown v. State, 27 Ala.App. 32, 165 So. 405; Nichols v. State, 27 Ala.App. 435, 173 So. 652.

■ The appellant having testified in his own behalf, his credibility was subject to impeachment by evidence that his general character was bad. Mealer v. State, 242 Ala. 682, 8 So.2d 178; Pendley v. State, 34 Ala.App. 453, 41 So.2d 205.

■ In response to a question in this aspect one of the witnesses, instead of answering that the defendant's general character was bad, stated, "It was rough."

Appellant's counsel, without posing any grounds, moved to exclude the answer. The court overruled the motion.

In support of claim for error, counsel cites the cases of Brown v. State, 20 Ala. App. 39, 100 So. 616, and Smith v. State, 197 Ala. 193, 72 So. 316. These authorities are not in point. They refer to the rule which disallows proof of the character of the accused for violence or turbulence before that nature of evidence is put in issue.

In the case at bar it is apparent that the witness used the word "rough" in the sense and meaning of bad. The motion to exclude did not raise the question that the answer was not responsive. If counsel entertained any doubt about what the witness really meant, the matter could have been clarified by cross-examination.

We are not convinced that we should predicate reversible error on account of this ruling.

■ The record discloses the following:

"Q. Did you know his reputation for being quarrelsome or fussy? A. Yes.

"Mr. Marshall: We object.

"The Court: Overruled.

"Mr. Marshall: We except.

"Q. Prior to November the 23rd, 1951? A. Yes, sir.

"Q. Is it good or bad? A. Bad.

"Mr. Ward: Judge I believe I will withdraw that question and ask that it be excluded.

"The Court: Gentlemen of the Jury we will exclude that answer to the last question about his reputation for being quarrelsome and fussy. You will not consider that in your deliberations, it has been withdrawn from the Jury."

The inquiry related to a character of evidence that was not in issue. The first question quoted above was subject to timely objections.

It is to be noted that the objections came after the answer.

On motion of the solicitor the court excluded the reply to the last question.

In this state of the record there is really nothing presented for our review.

Written charge number 7, refused to the defendant, is abstract. The State did not depend on circumstantial evidence for conviction.

For a full discussion of the propriety of the refusal of charge number 13, see Ledbetter v. State, 34 Ala.App. 35, 36 So.2d 564.

Refused charge numbered 14 is abstract and misleading. Only one defendant was on trial.

Refused instructions numbered 17, 18, and 21 were substantially covered by the court's oral charge and written charges given at the instance of the defendant. Title 7, Sec. 273, Code 1940; Kelley v. State, 32 Ala.App. 408, 26 So.2d 633.

■ Charge numbered 23 was properly refused. Premeditation is not an essential element of proof on an indictment charging assault with intent to murder. Buffalow v. State, 34 Ala.App. 418, 41 So.2d 417; Williams v. State, 18 Ala.App. 573, 93 So. 284; Kelly v. State, 15 Ala.App.

63, 72 So. 573; Smith v. State, 141 Ala. 59, 37 So. 423.

We have attempted to respond to each question presented by the record which merits any discussion.

The judgment below is ordered affirmed.

Affirmed.

### After Remandment.

On certiorari the Supreme Court disagreed with our holdings in two particulars.

In approaching the question of the propriety of the refusal of the general affirmative charge in appellant's behalf, we adopted the pronouncement in Smith v. State, 88 Ala. 23, 7 So. 103. The language in this case has been explained and qualified in later authorities, as was pointed out by the Supreme Court. The court held, therefore, that we were in error in basing our conclusion on this premise.

We are now confronted with the task of determining whether or not the general affirmative charge should have been given by applying the rule stated by the Supreme Court.

It should be noted that the requested affirmative charge is not directed specifically to the offense of assault with intent to murder. It asks for an acquittal of the defendant if the jury believe the evidence. The lesser offense of assault is included in the indictment. So, in reviewing the propriety of the refusal of the instruction, both offenses must be taken into account.

In our original opinion we delineated the salient facts in some detail, and we will not repeat them here. It is convincingly clear to us that the defendant was not due the charge in question. Dobbins v. State, 15 Ala.App. 166, 72 So. 692; Newton v. State, 92 Ala. 33, 9 So. 404; Christian v. State, 133 Ala. 109, 32 So. 64; Smith v. State, 8 Ala.App. 187, 62 So. 575.

The Supreme Court disagreed with us in our view relating to the matter of a predicate to the witness Holly. The record is recited in this aspect in the Supreme Court's opinion.

When this question was before us for review we concluded that counsel did not follow the rule in an attempt to lay the predicate. That is to say, he omitted to specify the time and the persons present. A statement of the trial judge indicated that the omission of the time should be supplied. This could have been done by counsel simply by reframing the question. So we decided that the court was authorized to sustain the objection and a reversible error should not be predicated on his action.

We felt so certain that our position was sound that we did not go into the matter further, but rested our review on this basis.

The duty is now imposed upon us to search the record to determine whether or not the ruling of the court should be sustained for other reasons. We think it should.

Prior to the attempt to lay the predicate the witness Holly had not testified that Sparks hit him at any time during the affray. In the predicate he was asked if he did not state to Mr. Thrower that Sparks did not hit him.

Of course, to impeach a witness by showing his prior statements, the statements must be contradictory or inconsistent to what the witness deposes at the trial in progress. Cotton v. State, 87 Ala. 75, 6 So. 396; Western Ry. of Ala. v. Turrentine, 197 Ala. 603, 73 So. 40; Lester v. Jacobs, 212 Ala. 614, 103 So. 682; Phillips v. State, 248 Ala. 510, 28 So.2d 542.

The judgment below is ordered affirmed.

Affirmed.

### On Application for Rehearing

In our opinion after remandment from the Supreme Court we observed: "Prior to the attempt to lay the predicate the witness Holly had not testified that Sparks hit him at any time during the affray. In the

predicate he was asked if he did not state to Mr. Thrower that Sparks did not hit him."

On application for rehearing after remandment appellant's attorney insists that the record does not sustain this conclusion.

We will copy from the record everything that was said by the witness Joe Holly in this aspect prior to the time in the proceedings that the predicate was laid:

"Q. Joe, I want you now to tell the Court and Jury just how this difficulty started down there at the Top Hat that night, start at the beginning and tell us what happened. A. When it first started I went inside to get a pack of cigarettes, you know where the bar is at * * *

"A. And so I come back through the door there and he was standing there and he said 'I'll bet you a hundred dollars my car will outrun yours' and so he said that and I said 'No, I am not going to bet you', and he said 'Well are you chicken or what' and I said 'Don't call me no chicken', and he said 'Oh, so you don't like it', and I said 'If you put it that way no, I don't like it', and he ran into me and grabbed me and we fell in between two tables, we turned one of them over and I kinda got to my feet, and this fellow Sailors hit me with a club from behind, I didn't know who it was that was hitting me and I guess he hit me about four times and I was trying to hold Melvin to keep him from hitting me * * *

"A. So I turned and Mr. Sailors was hitting me with a stick and I felt a lick from behind me on the head.

"Q. Was your back to the Defendant at that time? A. Yes, sir.

"Q. And you were facing Mr. Sailors? A. Yes, sir.

"Q. And then you felt a lick on the back of your head? A. Yes, sir, that is all I remember, I don't remember any more until outside."

The predicate was as follows: "At your apartment, at your home, after this fracas came up and you were talking about the trouble you had down there and talking about the injuries to your head, do you recall making a statement to Mr. Thrower to this effect, 'Mr. Sparks didn't hit me,' that it was Frank Sailors that tore my head up and hit me?"

It is evincingly clear that the predicate inquiry related to licks on the head of Holly. In this aspect Holly testified that Sailors hit him. He never testified that Melvin Sparks hit him on the head. The nearest he came to it was when he stated that his back was to Sparks and he felt a lick on the back of his head.

■■■ On review in the appellate courts all legitimate and fair presumptions must be resolved in favor of the rulings at nisi prius. In other words, error must affirmatively appear. Grissom v. State, 33 Ala. App. 23, 30 So.2d 19; Shewbart v. State, 33 Ala.App. 195, 32 So.2d 241.

The rule prevails that on appellate review, even in criminal cases, error is not presumed and the burden rests on the appellant to establish it. Garrett v. State, 248 Ala. 612, 29 So.2d 8.

In the case of Livingston v. State, 7 Ala. App. 43, 61 So. 54, reversed Ex parte State, 181 Ala. 4, 61 So. 53, this court held in effect that the privilege to impeach a witness by making proof of inconsistent prior statements is conditioned upon distinctly and clearly calling his attention with reasonable certainty to the time, place, and the person or persons to whom, or in whose presence, the statement was made. In the original opinion it was held that there was a failure in this respect, and a reversal of the judgment was ordered. On certiorari to the Supreme Court it was pointed out that the record did not affirmatively show the omission. The Supreme Court observed: "Upon appeal it is incumbent upon the appellant to affirmatively show error, and this rule applies to predicates as well as other questions, as the presumption is that the trial court did its duty, and that a predicate was laid, when required, unless it affirmatively appears that it was not properly established."

In the matter of instant review we do not have a similar factual situation, but the logic of the above rule is clearly pertinent and influencing.

We adhere to our former view, and the application for rehearing is denied.

Application for rehearing overruled.