344 So.2d 1225 (1976)
Charles David WOODS
v.
STATE.
4 Div. 486.
Court of Criminal Appeals of Alabama.
November 17, 1976.
Rehearing Denied January 4, 1977.
Bob Faulk, Phenix City, for appellant.
William J. Baxley, Atty. Gen. and Rosa G. Hamlett, Asst. Atty. Gen., for the State, appellee.
HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at 22 years in the penitentiary. Appellant was represented at arraignment and trial by retained counsel. He pleaded not guilty. After sentence was imposed, he gave notice of appeal. He was found to be indigent and a free transcript was furnished him. Trial counsel represents him on this appeal.
The evidence was in sharp conflict. The corpus delicti of the crime of robbery was clearly established. Appellant denied any involvement in the robbery and offered alibi testimony.
*1226 It is not disputed that on June 2, 1975, two white males, one armed with a pistol, robbed the office of Tri-Cater's Trailer Park in Phenix City, Alabama, of $300.00 in cash and took a number of checks totaling several thousand dollars.
Miss Linda Ann Cater testified that she was the office secretary and helped her father manage the trailer park and had held this position for five years. She stated that on the afternoon of June 2, 1975, at approximately 4 o'clock, she was in the office with a Mrs. Ruth Daisey, a tenant of the trailer park, who came in to pay her rent. At this time a man rushed in the office wearing a raincoat and work clothes. His face was disguised by a wig cap that had some type of fur on it and he had a thick dark mustache and was wearing large dark colored sunglasses. This man pulled a pistol and pointed it at Miss Cater and told her to, "stay put, this is a holdup." At this point the second bandit entered the office carrying two wires in his hands. He went through the trailer to see if anyone else was present. The second man was dressed, and his face was disguised, in the same manner as the man with the pistol. Both women were ordered to lie face down on the floor with their hands behind them and their hands were tied with the wire. In binding Miss Carter the bandit twisted the wire so tightly that one of the bones in her right wrist was broken and she had to be carried to the emergency room at a local hospital where a cast was applied. As soon as the robbers left, Mrs. Daisey managed to crawl to the door of the office and call for help.
Miss Cater stated that the robbers were in the office for several minutes and that she got a good look at the pistol and identified State's Exhibit 1 as the pistol used in the robbery. Miss Cater stated that she knew appellant as he had lived in the trailer park for about two years, but had moved several weeks before the robbery. She could not identify him as one of the bandits because of the disguise.
Mrs. Daisey corroborated the testimony of Miss Cater as to the manner in which the bandits were dressed and disguised. She was shown State's Exhibit 1 and stated that it was identical in size, shape and color to the pistol used in the robbery.
Mr. Leonard M. Cater testified that he was the owner of the trailer park that was robbed on the afternoon of June 2, 1975. He identified appellant as one of his former tenants. He stated that he left the trailer park around 4:00 p.m. to attend the funeral of a police officer and that he was running late. His car was parked at a store nearby and while walking to his car he saw appellant and they had a short conversation in which appellant asked him where he was going and he replied that he was going to Officer Lee's funeral.
David White was called as a witness for the State and testified that he had worked with appellant on several occasions and that he had two conversations with appellant concerning the alleged robbery. He stated that the first conversation occurred around the end of January, 1975, and that appellant told him that he was going to rob Tri-Cater Trailer Park and that he and his accomplice were going to use wigs and mustaches as disguises. White said he saw these disguises at the home of Michael Kenneth Davidson in Columbus, Georgia, and that appellant and Davidson were trying on the disguises. White stated that appellant asked him to participate in the initial attempt to rob the place as the driver of the getaway car. White agreed to the proposal made by appellant and then backed out as he was afraid they might get caught. White further stated that the first attempt to rob the place was to have occurred in February, 1975, but appellant said that when he and his partner arrived at the trailer park, they discovered there had been an automobile wreck at the place and there were too many police officers around the place.
According to White's testimony the second conversation with appellant occurred while they were working together at Wade Construction Company in July, 1975, and at this time appellant told White that he and his partner had robbed the trailer park and had taken $300.00 in cash, between eleven *1227 and twelve hundred dollars in checks, and a certificate of deposit in the amount of five thousand dollars. White was shown State's Exhibits 1 and 2 and stated that these were the same gun and shoulder holster he had seen at Woods' house. He said the reason he recognized the pistol was because appellant had let him shoot the pistol and told him that the gun belonged to him. He said the pistol was a .357 Magnum service revolver from the Columbus Police Department and he noticed that the gun had Badge No. 162 or 172 on it. White further stated that the pistol had been in a black shoulder holster with a white strap on it and he saw it in appellant's trailer after the robbery.
On cross-examination he testified that he was an informer for both the Phenix City and Columbus Police Departments. He was shown two photographs marked Defendant's Exhibits 2 and 3 and identified the two photographs as one Benny Driggers and stated that Driggers was the last person he saw with this pistol and that was in July, 1975.
Officer Steve Allen Pendleton of the Columbus Police Department testified that he had been employed with that Department since September 4, 1973. He was shown State's Exhibit 1 and stated the pistol was similar to the one that was issued to him by the Columbus Police Department and identified the weapon as a Smith & Wesson model 66, .357 Magnum, serial number 4K52900, City number C.P.D. 162 and that these numbers should be inscribed under the cylinder on the left hand side of the weapon. He stated that he last saw the .357 Magnum that was issued to him on the night of February 6, 1975. He said the weapon was stored inside the console compartment of his private automobile which he left parked in the First National Bank parking lot while he attended a movie at the Georgia Theatre. That when he returned to his car, he found the window on the passenger side of his car had been completely broken out and glass was scattered everywhere and the console compartment had been torn loose and his pistol was missing. He further testified that he had not seen his pistol again until he came to testify in this case. This witness identified a copy of the inventory sheet showing the serial number of the weapon that was issued to him and stated that it was a true, accurate and correct copy of the original on file with the Columbus Police Department. This was introduced into evidence. We have examined this inventory sheet and it shows that on January 20, 1975, this officer was issued a ".357 Magnum, serial number 4K52900, C.P.D. 162."
Terry Harris testified that he was a lifelong friend of appellant and he identified State's Exhibit 2 as being the holster similar to the one he traded to appellant on February 19, 1975, in exchange for a .25 automatic and $10.00 in cash. He stated that he specifically remembered the date as it was the same date he shot himself in the hand with the .25 automatic that he had received in the trade with appellant. He further stated that State's Exhibit 1 (the .357 Magnum) was similar to the gun that appellant was trying out in the holster and that he observed the letters "C.P.D." on the right side of the gun above the trigger handle and that appellant brought this gun with him when he came to Harris's home to trade.
Benny Driggers testified that he was an associate of appellant for eleven years. He identified State's Exhibit 1 as being the pistol he stole from appellant's trailer along with the holster as the gun was in the holster at the time. He stated that after stealing the gun he filed off the numbers and that he sold the gun and holster to Mr. DeLois Ludmand, the manager of a Texaco Service Station in Phenix City, for $60.00. Driggers stated that he had seen this gun and holster in appellant's trailer on several occasions and that it was kept in a compartment under the bathtub in Woods' trailer.
On cross-examination Driggers testified that he sold the gun and holster around the end of June or the first of July, 1975. He further stated that he was positive it was the gun he stole and the gun had "C.P.D." *1228 or something on it, but that he did not recall the numbers.
Mr. DeLois Ludmand testified that he runs the Texaco Station on 4th Avenue in Phenix City and that he bought the gun from Benny Driggers some time in July of 1975, and he identified State's Exhibits 1 and 2 as the gun and holster he purchased from Driggers for $60.00. He later sold these items to a relative for $125.00 but he helped the police recover the weapon and holster from his relative.
Mr. Tillis Hudson testified that he was a criminologist with the State Department of Toxicology and his qualifications were admitted by the defense. He stated that State's Exhibit 1 was delivered to him by the police with a request to see if he could restore the serial numbers that had been filed down on the weapon. He was asked to describe what he did in attempting to restore the numbers and the results. He testified as follows:
"A. Well, it consisted of examining the weapon under a stereoscopic microscope and polishing the area where the serial numbers are down and subjecting it to an acid and viewing it under the microscope during this time and seeing if the serial numbers are restored. Now, this is done or occurs because when a number is stamped on metal, it compresses the metal under where that stamp is made and then the acid will eat the metal out where the stamp was made and it will reveal the number even though it has been filed off. If it hasn't been filed too low, it will reveal the number that was originally stamped on the surface.
"Q. What numberswhat were you able to raise, please, sir; would you mind pointing out to us where on the gun and what numbers you raised?
"A. On the left hand side of this weapon, right under the cylinder hereI am going to have to refer to my notesthe letters, "C.P.D." and the numbers, "1" and "2" were detected. Now there was a space between the 1 and 2 and I was not able to detect that number but I was able to see the letters, "C.P.D." and the numbers, "1" and "2." Now, the serial numbers of this weapon is stamped on the base of the butt here, under the handle grips and it was mutilated to such an extent that I was not able to polish it down as smoothly as this one was; but subjecting it to the acid and the microscopic viewing of the fragment of the numbers that were left on the butt, we were able to come up with the number "4K5200." Now, there was a number between the 2 and the 0 that we weren't able to say for certain, but we all agreed that it was either a 9 or 3 or 6.
"Q. `9, 3, or 6'?
"A. Yes, sir."
Mr. Hudson further testified that the Assistant State Toxicologist, Mr. Noggle, ran a separate test in attempting to restore the numbers and that both of them came up with identical results.
Appellant testified in his behalf and stated that he knew David White and he also knew Benny Driggers. He admitted that at one time he owned a .357 Magnum similar to State's Exhibit 1 and that he purchased it from a man named John Mullen around the 10th or 15th of February, 1975. He said Mullen was not in court to testify and he didn't believe that he would be there to testify. He said he did not know his address. He admitted that he kept his gun and holster under the bathtub and he did not know who stole it. He also admitted that he traded a .25 automatic to Terry Harris and got a holster similar to the State's Exhibit 2.
He denied that he was involved in the robbery. That on the day of the robbery he was at home all day with his wife and baby except for about 15 or 20 minutes when they went to deliver a small chest of drawers to one of his friends. Appellant's wife testified and corroborated his alibi.
Appellant claims that the special prosecutor committed numerous errors in propounded questions to various witnesses. A careful examination of the record reveals that the witnesses did not answer the questions or that appellant's objections were sustained and the jury was instructed to *1229 disregard the testimony of the witnesses. On several occasions the questions were withdrawn upon objections being made by appellant and before the questions were answered.
If the trial court acts promptly to impress upon the jury that improper questions and improper statements are not to be considered by them in their deliberation the prejudicial effect of such remarks is removed. Gavin v. State, 52 Ala.App. 469, 294 So.2d 169; White v. State, 40 Ala.App. 378, 114 So.2d 325; Sparks v. State, 37 Ala.App. 631, 75 So.2d 96; Pelham v. State, 23 Ala.App. 359, 125 So. 688.
Improper questions which are not answered are harmless. Strickland v. State, 269 Ala. 573, 114 So.2d 407; Packer v. State, 55 Ala.App. 30, 312 So.2d 601.
Appellant contends that the chain of possession relating to the pistol allegedly used in the robbery was not connected and it was error to admit the pistol into evidence. We do not agree. State witnesses Officer Pendleton, David White, Benny Driggers, Terry Harris, DeLois Ludmand, Tillis Hudson and Officer Williams all testified as to the identity or similarity of the weapon and holster as being one with which they had some direct involvement or for which they assert that appellant was directly involved with and had seen it in his possession. There was direct evidence from Driggers that he stole the gun and holster from appellant's trailer and filed the identifying marks off the gun so that he could sell it to DeLois Ludmand. Appellant permitted David White to shoot the pistol and appellant admitted that he owned a .357 Magnum pistol that was very similar to the pistol introduced into evidence. Appellant admitted that he kept the pistol in a holster under the tub in his bathroom.
Conflicting evidence presents a question for the jury as to the guilt of the defendant, and a verdict rendered thereon will not be disturbed on appeal. Pugh v. State, 51 Ala.App. 164, 283 So.2d 616; Waters v. State, 55 Ala.App. 646, 318 So.2d 342.
Conflict in the testimony between defendant's alibi and the testimony adduced by the State presented a question for the jury in robbery conviction. Clay v. State, 52 Ala.App. 272, 291 So.2d 364; Paige v. State, 56 Ala.App. 121, 319 So.2d 740; Cronnon v. State, 56 Ala.App. 192, 320 So.2d 697.
Circumstantial evidence is entitled to the same weight that direct evidence is entitled to provided it points to the guilt of the defendant. Where the prosecution relies to a great extent on circumstantial evidence for a conviction, very wide latitude is allowed in making proof. Willis v. State, 37 Ala.App. 185, 66 So.2d 753; Sumeral v. State, 39 Ala.App. 638, 106 So.2d 270; Creel v. State, 53 Ala.App. 504, 301 So.2d 267; Lewis v. State, Ala.Cr.App., 337 So.2d 108.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Hawkins v. State, 53 Ala.App. 89, 297 So.2d 813; Bass v. State, 55 Ala.App. 88, 313 So.2d 208; Washington v. State, 55 Ala.App. 116, 313 So.2d 544; Jones v. State, Ala.Cr.App., 337 So.2d 116.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
AFFIRMED.
All the judges concur, except CATES, P.J., who dissents with an opinion.
CATES, Presiding Judge, dissenting.
I dissent because, inter alia, the special prosecutoreven though squelched by an initial adverse ruling by the trial judgepersisted in trying to get over to the jury that appellant was a user and/or seller of drugs. Brantley v. State, 294 Ala. 344, 317 So.2d 345, and Blue v. State, 246 Ala. 73, 19 So.2d 11.