LEIGH M. CLARK, Retired Circuit Judge.
Appellant-defendant was tried on an indictment that charged that he “unlawfully and with malice aforethought, did assault William H. Smith with the intent to murder him.” A jury returned a verdict as follows:
“We, the Jury, find the defendant guilty of Assault with Intent to Murder.”
He was sentenced to imprisonment for fifteen years.
The undisputed evidence, consisting exclusively of testimony of witnesses called by the State, shows that defendant was the object of a large, intensive manhunt in Marengo County on September 7, 1976. Law enforcement personnel included Mar-engo County Sheriff William H. Smith, state troopers, deputy sheriffs of Marengo County and other counties, and police officers from nearby cities. Also engaged in, or witnessing, the manhunt were many who were not law enforcement officers. Many of the officers had converged along the dirt road between Consul and Alabama Highway 5 in Marengo County, when defendant was observed by some of them running across the road, jumping over a fence and down an embankment. Before disappearing from their view, he stood and fired a rifle in the direction of a group or pair of officers that included Sheriff Smith. He was captured soon thereafter, after he had thrown the rifle into a pond, which was retrieved therefrom and introduced in evidence.
*780 A major insistence of appellant is that the evidence was insufficient to support a verdict that the firing of the rifle was with the intent to murder Sheriff Smith.
The principle is well established that an assault with intent to murder requires proof that there was an assault with intent to murder the alleged victim. Lawhon v. State, 41 Ala.App. 577, 141 So.2d 205 (1962). There is no requirement, however, that this element of the crime be conclusively established by the evidence. Assuming that there could be a reasonable difference of opinion as to whether defendant was shooting to kill Sheriff Smith, instead of one of the other officers in general or some one of them in particular, it would have been within the province of the jury to find that defendant intended to murder Sheriff Smith. Some of the evidence tends to support appellant’s position. On the other hand, portions of the testimony tend to lead to a contrary conclusion.
Only three witnesses testified that they saw defendant when he fired the rifle. They were Sheriff Smith, Chief Deputy R. P. Bridges and Deputy Dennis Mason. Chief Bridges said he was from one hundred to two hundred yards from defendant when defendant crossed the road, that Sheriff Smith and Deputy Mason were about the length of the courtroom from the witness when defendant shot the rifle “in the direction of Sheriff Smith.”
Deputy Mason testified that he was “two or three yards at the most” from Sheriff Smith. He said:
“A I was kinda hunkered down on the side of the road.
“Q Could you tell where he was pointing the rifle when he fired it?
“A Pointing it at us, yes, sir.
“Q You say ‘us’, was Billy Smith one of the ‘us’s’ that you’re talking about?
“A Yes, sir.

“Q How far was the person that was firing the shots from you?
“A Ralph Crear was about, probably thirty or forty yards from us at this time.
“Q Thirty or forty yards?
“A Yes, sir.
“Q And, you and Sheriff Smith were standing there together?
“A Yes, sir.
“Q And, he was just pointing the gun at ya’ll?
“A He shot at us.
“Q So, you don’t know if he was shooting at Sheriff Smith or not, do you?
“A No, sir, I can’t say exactly which one.
“Q You don’t know who he was shooting at, or even if it was him that was shooting?
“A Yes, sir, I know it was him that was shooting.
“Q But, you don’t know who he was shooting at, do you?
“A No, sir, I couldn’t say that.”
Sheriff Smith testified:
“Q How many shots did you hear fired by Ralph Crear from the rifle?
“A The only shot that I could say that he directly fired was the one when I was looking at him when he fired towards me.
“Q Towards you?
“A That’s'right.”
On cross-examination of Sheriff Smith, we find:

“Q And, that a shot was fired, and that was all you know. You don’t know if it was fired at you or not, do you?
“A I was standing there when he crossed the road.
“Q That’s not what I’m asking you.
“A I pulled my pistol.
“Q That’s not what I’m asking you.
“MR. WATKINS: Let him answer your question.
“A And, it appeared to me that he was firing towards me.
“Q He could have been firing towards Dennis Mason right beside of you.
“A Yes, sir.
“Q He could have been firing at people behind you?
*781 “A All I know is when he fired I was looking at him and the gun was pointed in the direction of me.

On redirect examination, the witness said:
“Q Mr. Smith, you said you had your pistol out; did you have your uniform on?
“A Yes, sir.
“Q And, you had your pistol in your hand at that time?
“A Yes, sir.”
The evidence does not show with absolute certainty that the rifle of defendant was aimed with marksmanly precision at Sheriff Smith, the alleged victim, but we think the evidence as a whole, including the testimony quoted above, permits a reasonable factual conclusion that he was shooting at Sheriff Smith in particular. A jury issue was thereby presented as to the guilt or innocence of defendant. The court was not in error in overruling defendant’s motion to exclude the evidence.
After the oral charge was given and the jury had retired and begun deliberations, they returned for additional instructions. One of the questions asked the court was:
“Are we to be prosecuting the defendant for intent to murder Billy Smith or prosecuting him for the intent to murder anyone?”
After reading aloud such question in the presence of the jury, the trial court instructed them as follows:
“I read the indictment once and the State has a burden of proving the indictment is that the Grand Jury of the County charges that before the finding of this indictment, Ralph Crear, whose name is otherwise unknown to the Grand Jury, unlawfully, and with malice aforethought did assault William H. Smith with the intent to murder him against the peace and dignity of the State of Alabama. It’s up to you to say in this case whether or not this defendant, Ralph Crear, assaulted William H. Smith with the intent to murder him. The indictment charges that assault with intent to murder was committed on William H. Smith. So, the State of Alabama has the burden of proving in this case that this defendant, Ralph Crear, did assault William H. Smith, maliciously, unlawfully, wilfully, with the intent to murder William H. Smith. That’s what the indictment charges and the State of Alabama has that burden of proof in this case. Are there any other questions that you may have?
“FOREMAN: No, sir.
“THE COURT: I’ll let you go back and begin your deliberations.”
The record shows that after returning again to the jury room for deliberations, the jury returned again to the courtroom and the foreman reported that they were not “close to arriving at a verdict.” Thereupon the court proceeded to give the jury additional instructions composing approximately three pages of the record, a part of which is as follows:
“So, you look into and see what intent was involved in this case; whether there was an intent to murder Mr. Smith; whether or not the defendant, Ralph Crear, intended to murder Mr. Smith. Now, the law of the State of Alabama is that if someone fires a shot or someone explodes dynamite, or if someone charges a speeding automobile into a crowd and there’s several people there, the law says that if that is an assault with intent to murder, and if death_and if the defendant would have been punishable by murder if someone had been killed, then that is the intent; you can infer an intent to kill from those circumstances whether it is a particular person or not. But you can infer an intent to kill someone. Now, this indictment charged that this defendant intended to kill William H. Smith by firing a weapon at him; that an assault was committed upon Mr. Smith by the defendant, Ralph Crear. As I said, the law of Alabama is that an assault with intent to murder is an assault with the intent to take a life under circumstances which, if had been successful, murder would, in either degree, have constituted murder. So, if someone had been killed there on this occasion, if there was a shot fired, would the defendant have been *782 guilty of murder? If he would have been guilty of murder on that time and occasion, then he would have also been — if murder was not committed then he would have been guilty of assault with intent to murder. So, it’s up to you to look into all of the circumstances on the occasion that arised out there and determine what the facts were; determine whether or not this defendant, Ralph Crear, was guilty of assault with intent to murder; determine whether or not he did fire a weapon; whether or not he fired the weapon at Mr. Smith with the intent to kill him; whether or not he committed an assault, willfully, maliciously, and intentionally, and unlawfully, there on that time and place. . . . ”
Upon completion of the court’s oral instructions, the court said:
“All right, Mr. Weaver, take them back to the jury room.”
The record continues as follows:
“(The following objection to the Judge’s charge was made outside the presence of the jury, but before they began their deliberations.)
“MR. COPLIN: We want to make an exception to the Judge’s charges. We except to the charge wherein he told the jury that you could find the defendant guilty of assault of intent to murder if, from the facts, they believe he fired a gun, or a deadly weapon, in such a manner as to constitute murder of any one of a group of people standing by. The law is that proof of an assault with an intent to murder must show an intent to kill the named victim, and malice. Our exception also is that in order to authorize a conviction of assault with intent to murder, a specific felonious intent must be proven. If there was not the intent to murder the person assaulted, although there' may have been a general felonious intent, a conviction of the aggravated offense would be improper.
“That’s all.
“(Whereupon, the jury began their deliberation further, after which they returned into court and the following occurred:)
“THE COURT: Ladies and Gentlemen, have you reached a verdict?
“FOREMAN: Yes, we have, Your Honor.
“THE COURT: Would you give that verdict to Mr. Sealy. I’ll ask that the defendant and his attorney please rise.
“MR. SEALY: We, the jury, find the defendant guilty of Assault with intent to Murder. Michael Callicott, Foreman.”
The intent requisite to a conviction for an assault to murder Sheriff Smith, as charged in the indictment, is not to be equated with the intent that is sufficient to authorize a conviction under an indictment charging murder.
“ . . . It is true, the aggravated offense with which the defendant is charged can not exist, unless if death had resulted, the completed offense would have been murder. From this, it does not necessarily follow, that every assault from which if death ensued, the offense would be murder, is an assault with intent to murder, within the purview of the statute, or that the specific intent, the essential characteristic of the offense, exists. Therefore, in Moore v. State (18 Ala. 533), an affirmative instruction, ‘that the same facts and circumstances which would make the offense murder, if death ensued, furnish sufficient evidence of the intention,’ was declared erroneous. The courts say: ‘There are a number of cases where a killing would amount to murder, and yet the party did not intend to kill. As if one from a housetop recklessly throw down a billet of wood upon the side-walk where persons are constantly passing, and it fall upon a person passing by and kill him, this would be, by the common law, murder; but if instead of killing him, it inflicts only a slight injury, that party could not be convicted of an assault with intent to murder.’ Other illustrations may be drawn from our statutes; murder in the first degree may be committed in the attempt to perpetrate arson, rape, robbery, or burglary, and yet an assault committed in such attempt, is not an assault with intent to murder .
*783 The intent in fact, is the intent to murder the person named in the indictment, and the doctrine of an intent in law different from the intent in fact, has no just application; and if the real intent shown by the evidence is not that charged, there cannot be a conviction for the offense that intent aggravates, and in contemplation of the statute, merits punishment as a felony . . . .” Simpson v. State, 59 Ala. 1, 10 (1877).
There has been no material change in the statutory law on the subject of assault with intent to murder since Simpson v. State, supra.
In Smith v. State, 88 Ala. 23, 7 So. 103 (1889), the court upheld the trial court in its refusal of a charge, in an assault with intent to murder case, to the effect that to authorize a conviction there must be a “specific” intent to murder the alleged victim. However, in Sparks v. State, 261 Ala. 2, 75 So.2d 103, rev’g 37 Ala.App. 631, 75 So.2d 96 (1953), the Supreme Court made it clear that, although the use of the word “specific,” in qualifying the requisite intent essential to an assault with intent to murder, could have a misleading tendency in a requested charge on the subject, which justified a refusal thereof, Smith v. State is not to be followed in its implication or statement that an intent to murder the alleged victim is not necessary. Sparks quotes with approval the following from Walls v. State, 90 Ala. 618, 8 So. 680, 682 (1890):
“Instructions, therefore, requested by a defendant, which require an acquittal of the felony, unless the jury find from all the evidence in the case that he intended to take the life of the person alleged to have been assaulted, should always be given. If to this form of instruction is added other matter by way of particularizing the necessary intent, as that it must be ‘positive,’ or ‘deliberate,’ or ‘actual,’ or ‘specific,’ etc., it may well be refused, not because the intent need not be, as a matter of abstract law, in a sense positive, deliberate, actual, and specific, but on the ground that the use of these descriptives involves a tendency to mislead the jury. On the other hand, no charge should be given which would authorize a conviction without proof, satisfactory to the jury, of the existence of an intention to take life, or which would require a conviction on any postulation of facts, although the jury may believe these facts to the contrary notwithstanding, that the defendant had no actual intention to take the life of the party assaulted, or which declares that no actual intention to take life is necessary. Of this sort were the charges given for the State in the case at bar. They are more than misleading. They are erroneous; and in giving them the trial court fell into error, which is fatal to the judgment rendered.”
In that part of the oral instructions to the jury at their last appearance before the trial judge prior to the rendition of the verdict, we find statements that are in conflict with that which was held in Simpson, Walls and Sparks, cited and quoted above.
No issue seems to be raised on appeal as to whether defendant sufficiently took exception to the erroneous portion of the court’s instructions, but we think consideration should be given to the question. The rule has been variously stated, but a uniformly accepted, if not reiterated word for word, statement of the rule is that the objector or exceptor should recite, or state the substance of that part of the court’s instructions to which the objection is made or the exception taken. Walker v. State, 269 Ala. 555, 114 So.2d 402 (1959); Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962); Burns v. State, 57 Ala.App. 281, 327 So.2d 920, cert. denied 295 Ala. 423, 327 So.2d 927 (1975); Magouirk v. State, Ala.Cr.App., 339 So.2d 168 (1976); Aldridge v. State, Ala.Cr.App., 351 So.2d 656, cert. denied 361 So.2d 658 (Ala.1977).
The exception expressly taken “to the charge wherein he [the judge] told the jury that you could find the defendant guilty of assault with intent to murder if, from the facts, they believe he fired a gun, or a deadly weapon, in such a manner as to constitute murder of anyone of a group of people standing by” constitutes in substance *784 an exception to that part of the court’s instruction as follows:
“ . . . If someone fires a shot or someone explodes dynamite, or if someone charges a speeding automobile into a crowd and there’s several people there, the law says that if that is an assault with intent to murder, and if death_and if the defendant would have been killed, then that is the intent; you can infer an intent to kill from those circumstances whether it is a particular person or not. But, you can infer an intent to kill someone.”
If the quoted portion of the charge, standing alone, is ambiguous, the ambiguity is removed by the following portion of the instructions:
“ , \ . . As I said, the law of Alabama is that an assault with intent to murder is an assault with intent to take a life under circumstances which, if it had been successful, murder would, in either degree, have constituted murder. So, if someone had been killed there on this occasion, if there was a shot fired, would the defendant have been guilty of murder? If he would have been guilty of murder on that time and occasion, then he would have also been — if murder was not committed then he would have been guilty of assault with intent to murder. . . . ”
Another question not raised on appeal, but which we think we should consider, is whether defendant’s exception was timely taken. The record shows, as quoted above, that it was taken “outside the presence of the jury, but before they began their deliberations.”
In numerous cases in Alabama it has been said that exceptions to an oral charge, or any part of it, to be availing, must be taken in the presence of the jury and before the jury retires:
“Our rules require a party who reserves an exception to the oral charge, or any part of the oral charge, of a trial judge to a jury, to do so in the presence of the jury and before the jury retires. The reasons for this rule are well known and need not be here repeated.” Meadows v. State, 182 Ala. 51, 57, 62 So. 737, 738 (1913)
We think it cannot be gainsaid that the statement in the record that the objection was made (or the exception was taken) “before they [the jury] began their deliberations” measures up to the statement in Meadows and other cases:
“Before the jury retires.”
This being true, we are now faced with a record that shows that the exception was not taken in the presence of the jury, but that it was taken before the jury retired. Does the exception taken meet the test set forth in Meadows, supra, and many other cases? This requires a consideration of the meaning of the expression “in the presence of the jury,” in the light of both past and present judicial procedure.
The time requirement as to the taking of an exception to the court’s oral charge, or a portion thereof, was first established in Alabama in City Council of Montgomery v. Gilmer & Taylor, 33 Ala. 116, 135 (1858):
“ . . . There are many authorities which hold, that an exception to the charge of the court may be taken at any time before the jury return their verdict; but we adopt the rule that the exception must be taken before the jury leave the bar, because it is supported by respectable authorities, has been for a long time universally recognized in practice in this State, and seems to rest upon a good reason. The reason is, that the court may have, at the time of giving the charge, an opportunity ‘for reconsidering and explaining it more fully to the jury.’— Phelps v. Mayer, 15 How. 160 [14 L.Ed. 643]; Leigh v. Hodges, 3 Scam. 15; Hill v. Ward, 2 Gilman 285; Wilson v. Owens, 1 How. (Miss.) 126; Life and Fire Insurance Co. v. Mechanics’ Fire Insurance Co., 7 Wend. 31. ...”
It is to be observed therefrom that the governing rule or principle was not in the form of a promulgated rule of court, but that it evolved, largely by reason of its recognition for a long time in the practice in the courts of Alabama. It is to be further observed from the case cited, City *785 Council of Montgomery, supra, that the time factor was stated merely and simply as “before the jury leave the bar.” Courts do not now cling to the expression “before the jury leave the bar,” but it was again stated as the time limit in Sovereign Camp, W. O. W. v. Gay, 217 Ala. 543, 117 So. 78 (1928), and again in Bentley v. Lawson, 280 Ala. 220, 191 So.2d 372. Whether there has been any substantial change in the meaning of the rule invites further consideration.
For a better understanding of the language “before the jury leave the bar,” we are indebted to Words and Phrases, “Gone from the Bar” and Dobkin v. Dittmers, 76 N.J.L. 235, 69 A. 1013 (1908). There was involved a statute that provided that a plaintiff had no right to obtain a voluntary nonsuit “ ‘after the jury have gone from the bar to consider their verdict’.” The trial court had instructed the jury “to render a verdict for the defendant.” After such instruction, plaintiff endeavored to obtain a nonsuit. The trial court denied plaintiff’s motion to that effect. In holding that plaintiff’s motion was too late, the Supreme Court of New Jersey stated:
“On the facts submitted in the present case the situation is the same, in contemplation of law, as if the jury, after receiving the charge of the court, had conferred together without leaving, the box, and announced to the court that they had agreed upon their verdict. The jury have “gone from the bar” within the meaning of that phrase in the statute when they have actually entered upon the consideration of their verdict, whether such action takes place within the precincts of the court room or in some other place provided for their use. Under the practice prevailing at common law the plaintiff was enabled to take advantage of knowledge acquired by him as to the result of the deliberation of the jury by permitting them to render their verdict in case it was in his favor, and preventing them from doing so in case it was adverse to him. Undoubtedly one of the purposes of the Legislature in the curtailing of this power was to prevent a plaintiff from depriving a defendant of the benefit of a verdict which had been found in his favor. To hold that he may still do so, unless the members actually walk out of the presence of the court before agreeing upon their verdict, is to emasculate the statute.” (Emphasis supplied)
The court went on to distinguish the case from two previous cases in which it had been held that the effort to obtain a nonsuit was not too late, by stating:
“The cases had not yet been given to the jury, and the application of the plaintiff was therefore within the statutory limit. In the present case, however, the matters in controversy had been submitted to the jury; they had been instructed by the court as to what their action must be under the facts proved; in theory of law they had agreed upon their verdict, and had returned to the bar to render it.”
Following the lead of the Supreme Court in stating the rule in City Council of Montgomery, supra, that the exception must be taken “before the jury leave the bar,” that such rule “has been for a long time universally recognized in practice in this State,” we note the prevailing, if not the uniform, practice in the courts of Alabama for many years, the same in criminal cases as in civil cases prior to the adoption of Alabama Rules of Civil Procedure, particularly Rule 51. During that time, in civil and in criminal cases, in compliance with the letter of the rule that then included the expression “in the presence of the jury,” attorneys for the parties and the trial judge, the court reporter and court attaches, saw to it that the jury did not leave the box until an opportunity for taking exceptions was afforded. Even so, such exceptions were taken out of the hearing of the jury. In usual practice, the attorney excepting would go to the bench with opposing attorney, and the court reporter, and there in an undertone make known the exception or exceptions. If there was a modification of the previous instructions, the trial court would address the jury in the box accordingly, and, if there were no further exceptions, would submit the case to the jury for a verdict; if the trial court did not modify its *786 previous instructions, it would then submit the case to the jury for its verdict. In the procedure narrated, the parties observed both the letter and the spirit of the rule, but as it was not a jurisdictional matter, either in letter or in spirit, the letter, as to the “presence of the jury” was sometimes waived, to the extent, at least, that the hearing as to the exceptions was in camera and that some, if not all, the jurors would be permitted to leave the box until the procedure as to the exceptions was concluded.
Although Alabama Rules of Civil Procedure, particularly Rule 51, do not apply to criminal cases, Rule 51 sheds light upon what is meant by the oft-stated rule, in civil and in criminal cases prior to A.R.C.P., that the exception must be taken “in the presence of the jury and before the jury retires.” Rule 51 provides in pertinent part:
“No party may assign as error . the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, . Opportunity shall be given to make the objection out of the hearing of the jury . . . .”
Although Rule 51 is not in the language in every respect of the quoted statement in Meadows, supra, and other cases, it accords in principle with the prevailing practice in the courts of Alabama prior to the adoption of Rule 51. The exceptions were taken usually while the jury was still in the box, but almost invariably out of the hearing of the jury. A long time before the adoption of Rule 51, it was generally recognized, although at times aggrieved attorneys would want the jury to hear their exceptions, that the better practice was that the jury not hear them. A practice otherwise could invite argument and perhaps lead the jury to think that the attorney was right and the judge wrong. We conclude from all of the foregoing observations that the expression “in the presence of the jury” has the same meaning as the expression “before the jury leave the bar,” which in turn, according to Dobkin v. Dittmers, supra, means “when they have actually entered upon the consideration of their verdict, whether such action takes place within the precincts of the court room or in some other place provided for their use.”
In reaching this conclusion, we are making no effort to change the rule. Our conclusion is to the effect that the words “in the presence of the jury” do not mean that the jury must be in the box, that the value of the expression is to be found in its emphasis upon the requirement that the exception must be taken before the case has been submitted to the jury, before the jury has so left the box as to commence its deliberations. Furthermore, we disclaim any intention to attempt to improve upon the language “[withjin the presence of the jury and before the jury retires,” that has been used by so many able justices and judges. The conjoined phrases do not constitute un-rhetorical redundancy. Even though each, with the other present, may be pleonastic, its use is approved as “a figure purposely used for special force or clearness.” The Oxford English Dictionary, Pleonasm (1961). According to these considerations, and according to the record which shows that the exception taken was “before they [the jury] began their deliberations,” the exception was within the time limit.
Our review of the many cases in Alabama in which it was stated that exceptions to the court’s oral charge must be taken “in the presence of the jury and before the jury retires” convinces us that in each of such cases in which it was held that the exception taken was not in time, such exception was actually taken after the jury retired. In Van Antwerp v. State, Ala.Cr.App., 358 So.2d 782, 787 (1978) it was “after the jury had retired.”; in Witherspoon v. State, Ala. Cr.App., 356 So.2d 743, 749 (1978), it was “[ajfter the jury left the courtroom to resume deliberations.” In Luker v. State, Ala.Cr.App., 358 So.2d 504, 507, the exceptions “were not made before the jury retired to commence their deliberations.” In Hurst v. State, Ala.Cr.App., 356 So.2d 1224, 1237 (1977) we find, “[wjhen the jury *787 retired, counsel made several exceptions to the Court’s oral eharge . . . ” As thus exemplified, it is to be noted that what is now being held as to the time for an exception to the court’s oral charge is not in conflict with what was actually held in the cases in which the rule as to time was stated as, “[with]in the presence of the jury and before the jury retires.”
In view of the necessity for a reversal and remandment as indicated above and the likelihood that other issues presented on this appeal will not arise again, we will make no determination of them at this time.
For the error discussed, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby reversed and the cause remanded.
REVERSED AND REMANDED.
HARRIS, P. J., TYSON and DeCARLO, JJ., concur.
BOOKOUT and BOWEN, JJ., concur specially.