HARRIS, Judge.
Appellant was convicted of grand larceny and the Court sentenced him to five years imprisonment in the penitentiary. At arraignment and trial appellant was represented by court-appointed counsel. He pleaded not guilty. After conviction and sentence he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent appellant on appeal.
The evidence presented by the State is not disputed. Appellant did not testify nor did he offer any testimony in his behalf.
Nate Conner and Buddy Lawrence were Deputy Sheriffs of Marengo County and were patrolling in the south end of the county on December 17, 1975. Between 1:30 and 2 o’clock a. m. on that date they came upon a U-Haul truck parked at or near an intersection on County Highway 25. They stopped and found a black man in the truck, who was later identified as Alonzo Posey, and asked if he was having any trouble. He replied that he was not but was merely waiting on a couple of men. Conner stated that he then saw two men walking on the side of the road. One of the men was later identified as Matthew Pritchett and the other man was appellant, Otis Jones. Appellant was carrying a flashlight which he threw into a ditch. The Deputies then left the truck and drove their car to these two men. Deputy Conner asked appellant what he had thrown into the ditch and appellant replied, “Nothing.” Conner then got the flashlight out of the ditch, and the two men were placed in the squad car and carried to the U-Haul truck. Appellant and Pritchett were wet and muddy. Appellant was wearing tennis shoes. The two men were asked where they had been and why they were so muddy. They stated that their car was stalled and that it had thrown mud on them when they were attempting to get it out. The officers *118 asked them where their car was located and they replied that they did not know. The officers felt that something was wrong and they decided to take the three men and the truck to the police station for a further investigation.
On the way to the jail one of the Deputies radioed Chief Deputy R. P. Bridges who met them at the jail. Conner and Bridges returned to the location on Highway 25 where the U-Haul truck had been parked. Near the place where the truck had been parked they noticed tracks from one side of the highway to the other and a great amount of mud. The tracks were plainly visible by flashlight and had been made by someone wearing tennis shoes and someone wearing “plain shoes.” The tracks were right beside a caterpillar tractor on which was a stack or roll of telephone cable. The officers observed where the cable had been pulled out and laid on a piece of iron on the tractor and cut. They followed the tracks and directly across the highway from the tractor they found a pile of wire or cable. The place where appellant and Pritchett had been seen was between this pile of cut wire and the place where the U-Haul truck had been parked. The officers put some of the cut wire from the pile in the squad car.
Chief Deputy Bridges testified that after he and Deputy Conner got to the scene he saw a trail of mud across the highway. A roll of wire was on the caterpillar tractor, and the cut off wire was on the opposite side of the highway. He stated they also found an axe or wire cutter and a wrench near the place where appellant and Pritch-ett had been picked up. He and his fellow officer put a couple of pieces of wire, a wrench, axe or wire cutter in the squad car and went back to the jail. When they got back to the jail, he placed Posey, Pritchett and appellant under arrest and gave each of them the Miranda rights and warnings. He stated that Pritchett made a statement after he was given his constitutional rights but appellant did not say anything.
Matthew Pritchett testified for the State. He testified that he, appellant, and Posey all lived in Birmingham. He stated that over a week prior to December 17, 1975, he and appellant had been to Marengo County and had seen the wire. He said that appellant, Posey and he met at his house on the afternoon of December 17, and all agreed to rent a truck in Birmingham and go to Mar-engo County and get the wire and they left Birmingham around 6:30 or 7 o’clock p. m. on that date. He testified that he had an axe that he had for some time and he brought the axe with them to cut the wire. He stated that they all agreed to share the expense of renting the truck and that he drove the truck.
Pritchett further testified that after they arrived in Marengo County, he drove to his grandmother’s home in Magnolia, Alabama. He could not remember if appellant and Posey actually went in his grandmother’s house but they left from there and went to the place where they had seen the wire. He stated that after they arrived at the place where the wire was located, he parked the truck a short distance from the tractor on which the wire was situated. That he and appellant both started cutting the wire and Posey stayed in the truck which was parked not more than 150 feet away. He said as they cut the wire appellant moved all of it across the highway and put it in a pile and they planned to bring the truck down to pick up the cut wire. That when they saw the officers, they were walking back to get the truck to load the wire which they had cut. He further testified that they intended to sell the wire but at that particular time they did not know to whom they were going to sell it.
Audrey Whitehead testified that he was employed by the Southland Telephone Company, Inc., and that he went to the scene where the telephone wire was cut. He stated that he measured the number of feet that was cut from the roll of telephone cable that was on the truck. He stated that about 1,030 feet of telephone cable had been cut from the roll on the tractor and placed on the opposite side of the road at his company’s job site in Marengo County. He said the value of the cable, which was *119 underground cable, was $1.00 to $1.50 a foot, or well over $1,000.00.
When the State rested, appellant moved to exclude the testimony of Matthew Pritchett saying, “Your Honor, at this time I would like to move to exclude the testimony of Matthew Pritchett on the grounds that it was uncorroborated testimony of an accomplice or an accessory.” This motion was overruled.
There was no motion to exclude the State’s evidence on the ground the State failed to prove a prima facie case; there was no request for the affirmative charge; there was no motion for a new trial; and there were no adverse rulings on the admission of any testimony that contained any merit.
The motion to exclude , the testimony of Pritchett as above mentioned raises an issue that must be dealt with.
Under the statute requiring corroboration of the testimony of accomplices to authorize conviction of a felony (Title 15, Section 307, Code of Alabama 1940), the corroborative evidence need not be strong, nor sufficient of itself to support the conviction, the criterion being that it legitimately tends to connect the accused with the offense. Moore v. State, 30 Ala.App. 304, 5 So.2d 644; Goodman v. State, 52 Ala.App. 265, 291 So.2d 358; Cunningham v. State, 54 Ala.App. 656, 312 So.2d 62.
Nor need such corroborative evidence directly confirm any particular fact stated by the accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776; Cameron v. State, 49 Ala.App. 482, 273 So.2d 242.
“Any circumstantial evidence is sufficient to corroborate if it proves that the accused was connected with the criminal act, or tends to connect him with the commission thereof, or if such connection may reasonably or clearly be inferred from the corroborative evidence; and where the accomplice is strongly corroborated by facts and circumstances connecting accused with the crime, a conviction will be sustained.” 23 C.J.S. Criminal Law § 812(3), p. 109.
The accomplice, Pritchett, testified that he, appellant and Posey lived in Birmingham. That he and appellant had been in Marengo County a week before and had seen the roll of telephone cable on a tractor on a rural county road. That appellant and Posey met at his house the afternoon before they left for Marengo County and decided to rent a U-Haul truck to load the telephone cable and Pritchett had an axe to cut the cable. Pritchett further testified that the U-Haul truck was parked a short distance from the tractor on which the roll of wire cable was located. That he and appellant cut the cable by using an axe and that appellant took the cut pieces of cable and piled them across the highway just opposite the tractor. He stated that after appellant had placed the cable in a pile across the road, they were on their way to get the U-Haul truck to load the wire when they were stopped by the officers. The officers found the U-Haul truck parked about 150 feet from the cut cable and also found the axe that was used to cut the cable. The officers saw tracks crossing the highway from the tractor to the place where the cut cable was placed and observed that one of the tracks was made by a pair of tennis shoes. Appellant was the only one of the trio who was wearing tennis shoes. The U-Haul truck and the axe and appellant’s presence at the scene of the crime strongly corroborated the testimony of Pritchett and certainly tended to connect appellant with the commission of the crime.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Hawkins v. State, 53 Ala.App. 89, 297 So.2d 813; Bass v. State, 55 Ala.App. 88, 313 So.2d 208; Washington v. State, 55 Ala.App. 116, 313 So.2d 544.
The State’s case rested on circumstantial evidence. Circumstantial evidence is entitled to the same weight as direct *120 evidence provided it points to the guilt of the accused. Creel v. State, 53 Ala.App. 504, 301 So.2d 267.
The evidence presented by the State was sufficient to support the judgment of conviction.
Affirmed.
All the judges concur, except CATES, P. J., not sitting.