HARRIS, Judge.
Appellant was put to trial on a two-count indictment charging grand larceny, and buying, receiving, concealing, or aiding in concealing, one Midland CB radio, of the value of $130.00, the personal property of Joe Tisdale. In the presence of court-appointed counsel at arraignment, appellant pleaded not guilty and not guilty by reason of insanity. The jury returned a general verdict of guilty as charged. The Court sentenced appellant to imprisonment in the penitentiary for a term of two years. He is in this Court with a free transcript and trial counsel was appointed to represent him on this appeal.
Mrs. Twyla B. Tisdale testified that she took her automobile to Capitol Motor Company on the morning of July 9, 1976, to be serviced. She told the man who wrote the work order there was a CB radio in the car and this was noted on the work order sheet. She stated that the CB radio was a gift from her to her husband and that she paid approximately $120.00 for it. She got off work at 4:30 on the afternoon of the same day she took her car to be serviced and when she went to pick up her car, she found the radio missing. She returned to the service department and reported the CB radio was not in her car. She was informed that Capitol Motor Company was not responsible for the theft of the radio. Mrs. Tisdale further testified that later she went to the Montgomery County Sheriff’s Office where she identified the CB radio. She said she knew it was the one that was taken from her car because her husband had engraved his name and Social Security number on the radio in her presence. She stated her husband’s name had been put on the CB radio in two places, but that in one place his name had been painted over.
On cross-examination Mrs. Tisdale testified that the radio was used both in her car and in her husband’s pickup truck. She said that her husband used the radio on the weekends and she used it during the week; that after recovering the radio from the Sheriff’s Department they put a slide-in bracket on it so that they could take it in and out of their vehicles.
She further testified that when she went to get her car she was not told whether it was locked or unlocked, that she was just given the keys. When she went to get her car she found both doors were unlocked, and no one was in the area of the car when she went to get it.
At the conclusion of Mrs. Tisdale’s testimony appellant moved to exclude the CB radio as evidence on the ground that the chain of custody had not been sufficiently established. This motion was overruled and the CB radio was admitted into evidence as State’s Exhibit No. 2.
Clarence Miller, an employee of Brewbaker Buick, testified that he knew appellant. He stated that in July, 1976, appellant came to see him a couple of times at the Buick place; on one of the occasions appellant asked Miller if he had a CB and he told him no. Appellant told Miller he had a CB radio and he would sell it to him. Appellant opened the trunk of a car he was driving and took out a paper bag and showed a CB radio to him. Appellant told Miller that the CB was his brother’s, but his brother had wrecked his car and did not have another car to put the radio in. Miller said he paid appellant $40.00 for the CB. Miller was shown State’s Exhibit No. 2 and positively identified it as the CB radio he bought from appellant for $40.00. He stated that he knew it was the same radio because it had the name “Tisdale” on it and that name was on it when he bought it from the appellant.
Miller further testified that Deputy Sheriff Duke came and got the CB from him *1144 five or six days after he bought it from appellant. Miller stated that he had not talked with appellant about the CB since he bought it from him and that he had not gotten his money back.
On cross-examination Miller testified that he was told that he might have to testify about purchasing the CB radio. He again stated that he saw the name “Tisdale” on the radio when he first got it. He said he first saw the CB at the Brewbaker Buick lot where appellant had it in the trunk of his car wrapped in a brown, rumpled paper bag. He stated that the CB had the same appearance then as it did at the trial and that it was not dusty. He said no one told him that he would get into trouble if he did not testify and that he did not have any interest in the outcome of the case.
Montgomery County Deputy Sheriff Fletcher Duke testified that he and another Deputy investigated the theft of the Tis-dales’ CB radio. They went to Clarence Miller’s home in Greenville, Alabama, on July 26, 1976, to pick up the radio. Duke further testified that he arrested appellant on a warrant signed by Mrs. Tisdale. He brought appellant to the Sheriff’s Office and read him the Miranda rights and warnings. He further testified that appellant said he understood his rights and signed a waiver of rights form. Appellant told the officer that he would make a statement. The statement was signed by appellant on July 31, 1976, and is as follows:
“I first saw the CB in the basement. At first I did not know what was in the paper bag. Then I went and looked in the paper bag and I saw a CB Radio. I left it there for about two weeks. On Friday, 16 July, I took it over to Brew-baker Used Car Lot and sold it to a boy named Clarence. Clarence gave me twenty dollars for it. At the time I sold the CB I had been working at Capitol Olds Motor Company for two and a half months. The next Friday, July 23, 1976, I was fired from Capitol Olds Motor Company.”
The waiver of rights form signed by the appellant was introduced into evidence as State’s Exhibit No. 1, and the signed statement was introduced into evidence as State’s Exhibit No. 3, all over appellant’s objections.
At the conclusion of the State’s evidence appellant moved to exclude the evidence and discharge the defendant on the grounds that the State had failed to show a taking and carrying away to make out any charge against the defendant. Further, that there was no evidence that appellant had any connection with the theft of the CB radio that belonged to Tisdale as alleged in the indictment, and further, that the State had failed to prove any evidence showing aiding and abetting in any way as to the stolen property. The motion was overruled.
The defense then called James Stubbs who was employed at Capitol Motor Company as Service and Parts Director. Mr. Stubbs testified that the appellant worked at Capitol Motor Company from June to July, 1976, as a clean-up man, and that he was discharged from this job. Mr. Stubbs said that the discharge was not related to the theft of the CB radio. The witness testified that at the time of the theft, he had approximately 15 or 20 people working as servicemen and that any of them would have access to customers’ vehicles. He said that keys to customers’ cars were hung on a board at the service shop behind the service writer’s desk, and that this was an open area. He said that anyone who worked in the shop had access to this area. Mr. Stubbs said that after a car is repaired it is parked back on the lot and it may be unlocked or locked, depending on whether they have the keys to unlock the door. Mr. Stubbs did not know who stole the CB radio.
On cross-examination Mr. Stubbs said that Sherman Williams was discharged because he stayed out from work sometimes without calling in and that on several occasions he could not be located during working hours. Mr. Stubbs said that the basement area was the bottom floor of the parking area where the automobiles were stored and also where parts were stored. He said that no CB radios were kept down *1145 there. He also said that after finding out that a CB radio had been taken from Mrs. Tisdale’s ear, he did not look for the CB radio, nor did he find it.
Mrs. Martha Williams, the mother of the defendant, testified that on the night he was arrested, he told the police officers that he did not steal the CB radio.
The appellant, Sherman Williams, took the stand and testified that he did not steal a CB radio out of any car at Capitol Oldsmobile, but that he did find a CB radio while working there. He said that he found the radio in the lower ramp area over in a corner in a paper bag. He admitted that the corner was in an area that is well traveled. He said he was goofing off in that area when he found the radio, and that it was in a brown paper bag. He said that he saw the paper bag and went over and looked in it and saw a CB, but that he did not take it at that time. He let it stay there for about two weeks and during that period he did not take it out or examine it. He said he told a friend of his, Fleming Flowers, about the radio. He took the radio to Clarence Miller and he said that Clarence Miller offered him $40 and a tape player for the radio and that he gave him $20 at the time in return for the radio. Appellant said that he never took the radio out of the bag or touched it. He said that he never saw any initials, names or numbers on the radio. He said that he had no reason to believe that the radio might be stolen.
On cross-examination appellant said that he did give a statement to Sheriff Duke and that he remembered his rights being read to him prior to giving the statement. He said that the statement given by Sheriff Duke in court was substantially the same as the statement he had made. The appellant said that Clarence Miller bought the radio without even taking it out of the bag, and that he did not know whether it would work or not. Appellant admitted that on May 28, 1976, he was convicted of buying, receiving and concealing stolen property, a TV set, and that he was given a year in the county jail. The appellant repeated that he did not steal the radio but simply took it out of the basement. He said he did not put the radio there and he did not hide it in the basement.
On recross-examination appellant said that for the two weeks the radio was in the basement, he did not in any way attempt to conceal it or move it or cover it up.
Fleming Flowers testified that he knew the appellant and that during July, 1976, appellant told him about a CB radio that was in a brown paper bag and said that if nobody claimed it, he was going to get it. He said that later appellant came by with the brown paper bag, but he did not take the radio out of the bag.
Appellant filed a motion for a new trial raising the sufficiency of the evidence. No testimony was presented at this hearing and motion was overruled and denied.
The State relied on circumstantial evidence for a conviction. Where the prosecution relies upon circumstantial evidence for a conviction, a very wide latitude is allowed in making proof. Hollenquest v. State, 53 Ala.App. 501, 301 So.2d 264.
Circumstantial evidence will support a criminal conviction if it is so strong and cogent as to show the defendant’s guilt to a moral certainty. Tanner v. State, 291 Ala. 70, 277 So.2d 885; Locke v. State, Ala.Cr.App., 338 So.2d 488. Circumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused. Locke, supra; Lewis v. State, Ala.Cr.App., 337 So.2d 108; Jones v. State, Ala.Cr.App., 337 So.2d 116; 6 Alabama Digest, Criminal Law, Sections 552(3), 552(4).
The corpus delicti was proven in this case by the testimony of Mrs. Tisdale, and the officers connected appellant with the crime. Appellant’s possession of the CB radio was shown by the testimony of Clarence Miller. He identified the CB radio as the one he bought from appellant because it had the name “Tisdale” engraved on it.
Where there is legal evidence from which the jury can by fair inference *1146 find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; 7 Alabama Digest, Criminal Law, Section 1159.2(8).
It is not within the province of this Court to pass judgment on the truthfulness or falsity of conflicting evidence. Snipes v. State, 50 Ala.App. 139, 277 So.2d 413; Williamson v. State, 57 Ala.App. 113, 326 So.2d 303; Stuckey v. State, 57 Ala.App. 85, 326 So.2d 150.
In Young v. State, 283 Ala. 676, 220 So.2d 843, the Supreme Court held:
“Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state’s evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error.”
The testimony of both Mrs. Tisdale and Clarence Miller sufficiently identified the CB radio which tended to show the commission of the crime, and was properly admitted into evidence, as against appellant’s contention there was a missing link in the chain of custody. Franks v. State, 45 Ala.App. 88, 224 So.2d 924; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186.
In Blakely v. State, Ala.Cr.App., 344 So.2d 812 (released by this Court on March 8, 1977), it was said:
“. . .To warrant the reception of an object in evidence against an objection that an unbroken chain of [evidence] has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain.”
The evidence in this case clearly shows the CB radio was the property of Joe Tis-dale as laid in the indictment.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.