HARRIS, Presiding Judge.
Appellant was put to trial upon a two-count indictment charging: (1) burglary in *704 the second degree, and (2) grand larceny. At arraignment, in the presence of counsel, he pleaded not guilty. The jury returned a verdict finding appellant guilty as charged in the indictment and the Court sentenced him to three years imprisonment in the penitentiary. He is in this Court with a free transcript and trial counsel was appointed to represent him on appeal.
The testimony presented by the State is not in dispute. Appellant did not testify nor did he offer any evidence in his behalf.
There was no request for the affirmative charge; there was no motion for a new trial, and no exceptions were reserved to the Court’s oral charge to the jury. However, when the State closed its case, appellant moved to exclude the State’s evidence on several specific grounds. The motion was overruled. This puts us to a recital of the evidence.
James Gillilan, d/b/a Tanyard Sand and Gravel Company, testified that in January, 1977, he was in the process of putting in a sand and gravel business on Highway 278 in Blount County, Alabama. He closed his shop at 5:00 p. m. on January 27,1977, after checking and locking the doors to his shop. The next morning he returned to his shop at about 7:30 a. m. and found the back door had been broken open and all of his tools and other property were missing. He stated the missing property consisted of an 18 inch Polarite chain saw, numerous sockets and wrenches, screwdrivers, anti-freeze, motor oil, grease, welding rods, and, in short, everything he had. He estimated the reasonable and fair market value of his missing property to be approximately $5000.00.
Mr. Gillilan further testified that he wrote his name on most of the metal tools with an engraving pencil and that he put two notches on the handles of the wooden screwdrivers. He notified the Blount County Sheriff’s Department and a representative of that office talked to Mr. Gillilan and got a full description of the missing property. Some time later he was called to the Sheriff’s Office and found most of his missing property and after identifying the property it was released to him.
Roger Beam, an investigator with the Blount County Sheriff’s Office, was assigned to investigate the burglary and theft and arrived at the scene of the burglary around 8:45 on the morning of January 28, 1977, along with Chief Fowler of the Walnut Grove Police Department. Officer Beam stated that he examined the building on the premises and found there had been a forced entry of the back door as he observed pry marks on the left side of the door. Mr. Gillilan gave him a general description of the missing property and told him that he had engraved his name on most of the metal tools and had cut two notches on the handles of the screwdrivers.
The investigation into the theft and burglary led the officers to the home of Roger and Rita Franklin at Route 2, Altoona, Alabama, where Officer Beam saw a 1966 Oldsmobile parked in the driveway. Beam looked through the window of the car and saw a screwdriver lying on the back floor in plain view and he observed that it had two notches cut in the wooden handle just as described by Mr. Gillilan. He testified that the screwdriver with the notches thereon was fully visible from outside the car and, in fact, it was the notches on the handle of the screwdriver which first drew his attention to it. Upon recognizing the two notches on the screwdriver he then opened the car door and removed the screwdriver in the presence of Chief Fowler and kept it in his exclusive possession until it was produced at trial.
Beam testified on cross-examination that he did not have a search warrant, nor an arrest warrant, when he first went to the Franklin house.
Beam stated that when the officers went to the Franklin residence he had information that Roger Franklin, his brother, Gary Franklin, and two unknown white males had been seen at Scruggs Truck Stop in Etowah County at 1:00 a. m. after the burglary.
Beam further testified that he had not entered the Franklin home at the time he *705 spotted the screwdriver but that Chief Ezra Poole, Officers Fowler, Glasscock and he knocked on the door and asked for Roger Franklin who came out of the house. He showed Roger the screwdriver and asked him if it belonged to him and he said no. He specifically denied ownership of the screwdriver though it was found in his car.
Beam further stated that Rita Franklin told the officers that appellant had been staying with them for a few days and on the night of the burglary Roger, Gary Franklin, Jackie Pope and appellant had been riding around in Roger’s car drinking. Beam asked Roger for permission to search his automobile and this request was refused. Roger and Gary Franklin were arrested for burglary and placed in jail.
Beam went before a Circuit Judge, signed an affidavit and secured a search warrant to search the Franklin residence together with the yard curtilage and any vehicles parked on the premises. Pursuant to this search warrant the officers searched the Franklin house and found some stolen property that was unrelated to the burglary under investigation.
On this occasion Beam met appellant for the first time at the Franklin house. Beam showed appellant the screwdriver and appellant denied seeing it at any prior time. Appellant was arrested in the yard of the Franklin house and charged with burglary. He was then and there given the Miranda rights and warnings and stated he understood his rights. He was transported to jail. At the Sheriff’s Office he was again given the Miranda rights and again stated that he understood them. Appellant was again interrogated.
Officer Beam further testified that appellant stated he knew nothing about the burglary but that Roger and Gary Franklin might have gone in the place and that he might know where some of the tools were hidden. Appellant then agreed to accompany Chief Fowler and Investigator Aubrey Glasscock to see if they could locate the tools. He said that appellant’s agreement to go with the officers was not induced by any offer of reward, promise or threat.
Beam stated that he did not know where appellant, Glasscock and. Fowler went in search of the stolen property, but when they returned to the Sheriff’s Office they had the tools with them.
Appellant was again given the Miranda rights and warnings and he told Officer Beam that on the prior day, he, Roger and Gary Franklin, and Jackie Pope were riding around in Roger’s car drinking beer. He stated that he went to sleep and the other men waked him and asked him to drive the car and let them out in front of a sawmill or gravel pit on Highway 278. He said the other men told him to drive the car up and down the highway until one of them stopped him. He drove up and down the highway a few times until he was stopped by the others who got in the car and then appellant drove the car to Scruggs Truck Stop and bought gas. After getting the gas appellant stated that Roger Franklin then started driving and backed into Gilli-lan’s place, loaded the tools and left the place.
Officer Beam further stated that he examined the tools when they were brought to the Sheriff’s Office and saw the notches pn the handles of the screwdrivers and “Jim” was engraved on the ratchet handles on the metal tools.
Investigator Aubrey Glasscock testified that on the afternoon of January 28, 1977, appellant made a statement after being advised of his rights by Officer Beam in his presence. Glasscock then read from a Miranda card the rights which were given to appellant. He further stated that appellant was not threatened by anyone in his presence or hearing, nor was he offered any promises, rewards or other inducements to make any statements. He said appellant voluntarily went with him and another officer to search for the tools. He stated they were first directed by appellant to go to a certain place known as Catche Low Knob, located near Snead, Alabama, off Highway 278. According to Glasscock appellant said that Roger and Gary Franklin had stated to him they always hid stolen merchandise under a rock at this place. They searched this *706 place but the tools were not there. Appellant then told the officers he knew of another place where the tools might be. They got back in the car and started driving and appellant told them to drive slowly as he was not familiar with the road and would have to look carefully. After driving a short distance appellant told the officers to park the car about two hundred yards from Antioch Church of Christ and they might find the property on the side of the road hidden in some woods. The officers followed appellant’s instructions and found in the weeds several small hand tools, hand wrenches, a chain saw, and motor oil. They put this property in the car and returned to the Sheriff’s Office where a photograph was made of these items found during this last search. The photograph was marked for identification as State’s Exhibit No. 3. After the proper predicate was laid this Exhibit, State’s Exhibit No. 3, was admitted into evidence. Mr. Gillilan identified these items of property and they were released to him.
On cross-examination Glasscock testified that there were 45 screwdrivers found at the church all of which had wooden handles with notches cut into them. He could not recall if the larger items were marked or engraved with the name of the owner.
James Gillilan was recalled and testified that State’s Exhibit No. 2, the screwdriver, was his property. He said that the last time he saw the screwdriver was when Officer Beam brought it to his shop on January 28, 1977, for identification. He identified it on that date as being his on the basis of the two notches he had cut on the handle.
The Court sustained appellant’s objection to the introduction of State’s Exhibit No. 2 into evidence.
The State then rested its case and out of the presence of the jury appellant moved to exclude the evidence. The Court overruled the motion.
Appellant was given the Miranda rights and warnings at least three times. He gave an oral statement that was taped. The taped statement was typed and given to appellant to read. He read the transcribed statement and signed his name on the last page in the presence of Officers Beam and Glasscock who signed their names as witnesses. Appellant also initialed each page.
After the proper predicate was laid showing no promises, threats, rewards or other inducements were made to get appellant to make any statements to the officers, the trial court determined that the statement was freely and voluntarily made and permitted it to be read to the jury.
It developed during the course of the trial that the affidavit and search warrant were never filed in the Circuit Clerk’s Office. Appellant moved to suppress the affidavit and the search warrant and the trial court granted the motion, probably on the basis of our holding in Owens v. State, 51 Ala. App. 50, 282 So.2d 402.
This is a circumstantial evidence case. Where the prosecution relies to a great extent on circumstantial evidence for a conviction, very wide latitude is allowed in making proof. Brown v. State, Ala.Cr.App., 331 So.2d 820; McCay v. State, Ala.Cr.App., 343 So.2d 577; Woods v. State, Ala.Cr.App., 344 So.2d 1225.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Woods v. State, supra; Jones v. State, Ala.Cr.App., 337 So.2d 116.
The circumstantial evidence which enshrouds appellant is that he drove the car on the night of the burglary as a lookout for the men who actually broke into the shop where the stolen property was located. He was present when the property was loaded in the car. He directed the officers to the place where the stolen property was hidden and he got out of the car and walked through the weeds with the officers to the spot where the property was found. The jury could reasonably infer from this evidence that appellant was a guilty participant in the burglary and theft of the property listed in the indictment.
*707 We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.