Appellant was convicted of violating the Alabama Uniform Controlled Substances Act, Title 22, Section 258 (47), 1973 Cumulative Supplement. Omitting the formal parts the indictment reads as follows:
 "The Grand Jury of said County charge that before the finding of this Indictment Joseph Lucian Chesteen, alias Joseph L. Chesteen, alias Luke Chesteen, whose name is otherwise unknown to the Grand Jury than as stated, did sell, furnish or give away, Phentermine, a controlled substance contrary to the provisions of the Alabama Controlled Substances Act, against the peace and dignity of the State of Alabama."
Throughout the trial proceedings appellant was represented by retained counsel and at arraignment pleaded not guilty. The jury returned a verdict of guilty and assessed a fine of Fifteen Thousand Dollars against him. As additional punishment the Court sentenced appellant to seven years imprisonment in the penitentiary.
The evidence is circumstantial and extremely conflicting in many respects. The jury encountered considerable difficulty in reaching a verdict. This case grew out of an occurrence at the Tuscumbia Drug Store on the afternoon of May 28, 1976, after one Harold Hatton was observed leaving the drugstore with a white paper bag in his hand.
The Sheriff of Colbert County, John L. Aldridge, testified that at approximately 4:15 p.m. on May 28, 1976, he ordered the Tuscumbia Drug Store staked out. The Sheriff and his Chief Deputy, Doug Aycock, in separate automobiles, took up positions near the drugstore. While so positioned they saw Hatton leave the front entrance of the drugstore and enter a Lincoln Continental around 5:15 p.m. which started moving away. Aycock pulled in behind the car occupied by Hatton and the Sheriff pulled in behind Aycock. The Lincoln Continental was stopped about one and a half blocks from the drugstore. The Sheriff walked to the passenger side of the stopped car and directed Hatton to get out. When Hatton opened the car door the Sheriff saw a white paper sack lying on the floorboard of the car. This sack contained two bottles which were labeled "Ionamin", a trade name for the drug "Phentermine." The bottles were full of yellow capsules. Hatton and his driver were placed under arrest. Hatton was searched by another Deputy Sheriff in the presence of the Sheriff. The search yielded two smaller bottles which also contained yellow capsules. A short time later the Sheriff ordered appellant arrested.
Doug Aycock testified that he was Chief Deputy for the Colbert County Sheriff's Office. He stated that at Aldridge's instruction he set up a stakeout of Tuscumbia Drug Store. At 5:20 p.m., Aycock saw Hatton enter the drugstore. Hatton was empty handed at that time. When Hatton left the store, he carried a white paper sack. Hatton got in a Lincoln Continental and drove off, with Aycock following. The Lincoln was being driven by Rod Hamby. Aycock was present at the time that Aldridge recovered the sack containing the Ionamin and when Hatton was searched. Aycock *Page 104 
then went to Tuscumbia Drug with Deputy May. Appellant, John Lawson, and Vicki Moultrie were in the store. May read appellant and Lawson their rights from a Miranda card. Appellant stated that he understood and agreed to talk to the deputies. Aycock then asked which of them had waited on Hatton. Appellant replied that he did. Aycock shortly thereafter placed appellant under arrest. Subsequently, an audit was conducted of appellant's drugs on hand at the store. Aycock and Victor E. McClellan, an agent with the Diversion Investigation Unit of the Alabama Department of Public Safety, spoke with the appellant after he was again informed of his Miranda rights. McClellan asked if he could explain a shortage of Ionamin capsules. Appellant replied, "I can't."
Millard Conley testified that he was employed by the Colbert County Sheriff's Office. On May 28, 1977, he participated in a stakeout of Tuscumbia Drug Store. In response to a radio dispatch, Conley left his position and drove down 6th Street East where he discovered Hatton, Hamby, Aldridge, and Aycock standing next to a Lincoln Continental. Conley read Hatton and Hamby their Miranda warnings and also searched Hatton. He recovered two plastic bottles in the left front pocket of Hatton's trousers. Conley carried these bottles and the bottles recovered by Aldridge to the toxicology laboratory in Florence, Alabama.
Vickie Moultrie testified that she was employed at Tuscumbia Drug Store. On May 28, 1977, she saw Hatton enter the store. Hatton came in the store two or three times a month. He was empty handed when he entered the store. Hatton remained there thirty to forty-five minutes. She saw Hatton talking to appellant in the store. Subsequently, Moultrie saw Hatton carrying a white paper sack when he left the store.
Elaine Scott testified that she had been employed by the Alabama Department of Toxicology for three years. Scott received a B.S. degree in laboratory technology from Auburn University and was working on a Master's Degree from the University of Alabama in Criminal Justice. Scott further stated that she had completed approximately a thousand drug identifications during the course of her work, including training at the Drug Enforcement Agency of the Federal Government's Forensic Chemist Seminar.
Scott further testified that Conley turned over to her two small bottles containing 50 capsules, each bearing an imprint of 18-904, and two large glass bottles, labeled Ionamin 30, containing yellow capsules imprinted with 18-904. Each of the large bottles contained 400 capsules. She also received a white paper sack. Scott made an identification of the contents of all four bottles, by a Micro Chemical Color Test. Scott found that these capsules contained phentermine, a controlled substance in Alabama.
Scott also removed prints from these bottles and forwarded them to the Alabama Bureau of Fingerprint Investigation. These prints were not identified as appellant's.
John Lawson testified that he was a pharmacist at Tuscumbia Drugs from June, 1973, to September, 1976. Lawson saw Hatton in the drugstore on May 28, 1976, between 4:30 p.m. and 5:00 p.m. Hatton was talking with the appellant. Lawson further testified that Hatton came in the store two to three times a week, with appellant usually waiting on him. Lawson never filled a prescription for Hatton. Lawson stated that Ionamin was kept on the prescription shelves and also in the rear of the store. He had ordered Ionamin for the store on occasions. He never filled a prescription for Ionamin for Hatton. Neither did he give Hatton any Ionamin. On May 28, 1976, Lawson did not see appellant hand anything to Hatton. Nor did he see Hatton leave the store carrying anything.
Lawson testified that there was a padlocked stainless steel cabinet in the back of the store. Only appellant had the combination to this lock.
Victor E. McClellan testified that he was employed by the Alabama Bureau of Investigation and attached to the Diversion Investigation Unit. This unit is a specialized *Page 105 
narcotics unit whose purpose is to insure compliance with the Alabama Controlled Substances Act. On May 29, 1976, he, D.I.U. Agent Bill Sanders, and Deputy Ronny May of the Colbert County Sheriff's Office went to Tuscumbia Drug Store, where an audit of Ionamin capsules was conducted. This audit concerned 15 milligram and 30 milligram Ionamin capsules. An inventory conducted on July 20, 1975, showed 180 Ionamin 15 milligram and no Ionamin 30 milligram present in the store. On May 29, 1976, 186 Ionamin 15 milligram and 4,032 Ionamin milligram 30 capsules were in stock. Appellant's purchase books showed that between July 20, 1975 and May 29, 1976, 180 Ionamin 15 milligram and 22,400 Ionamin 30 milligram were bought. A check of appellant's distribution files revealed that only 146 Ionamin 15 and 760 Ionamin 30 had been legally distributed, leaving a shortage of 17,608 Ionamin 30 capsules during that period from July 20, 1975 and May 29, 1976, for which appellant could give absolutely no explanation. He told the officer there had been no burglary of his store in three or four years.
On cross-examination, McClellan stated that the 1975 inventory was done by John Lawson. However, Lawson was not questioned concerning the shortage. McClellan stated that Lawson was not questioned because both appellant and Lawson told him that appellant was in charge of the store.
Appellant testified that he had owned and operated Tuscumbia Drug since 1964. He stated that Lawson ordered and checked in most of the drugs at the store. Controlled drugs were kept in a stainless steel cabinet in the rear of the store. Appellant testified that this was not always locked.
On May 28, 1976, appellant testified that he waited on Harold Hatton at the counter. Hatton was checking on some sunglasses appellant had ordered for him. Appellant told Hatton that he had not gotten them in yet. This ended the conversation. Appellant stated he then went into his office. Appellant denied selling or giving Hatton any drugs. Appellant also testified that he was the only person who had the combination to the steel cabinet in which the controlled drugs were kept.
Fred Hovater, Jr., testified that he was a pharmacist at Medical Plaza Pharmacy in Muscle Shoals, Alabama. Hovater knew appellant and had gone to college with him. He testified that appellant's general reputation and his reputation for truth and veracity were good. Hovater would believe appellant under oath. On cross-examination Hovater testified that normally 1,000 to 1,200 Ionamin were prescribed in a drugstore a year.
Atwell McNees testified that he was an accountant in Tuscumbia and had known appellant twelve years. McNees stated that appellant's general reputation was excellent and that his reputation for truth and veracity was also excellent. McNees testified that he would believe appellant under oath.
Don Lenz testified that he was a pharmacist in Muscle Shoals. He stated appellant's general reputation and reputation for truth and veracity were good. He further stated that he knew John Lawson's reputation for truth and veracity and that he would not believe him.
On cross-examination, Lenz testified that at the very most no more than 7,000 Ionamin 30's were sold in a year. He would never have reason to buy 22,000 of these pills in a year. Nor did he ever keep 4,000 Ionamins in stock at a time.
Fred Holland testified that appellant's general reputation and reputation for truth and veracity were good.
Clyde Ray testified he was a pharmacist in Muscle Shoals and had known appellant for twelve years. He stated appellant's general reputation and reputation for truth and veracity were very good.
Angelynn Ricks testified that she was a school teacher in Tuscumbia, and that she had known appellant for twelve years. She testified that his general reputation and reputation for truth and veracity were excellent.
This concluded the taking of testimony. *Page 106 
Appellant contends that the evidence is insufficient to support his conviction. At trial appellant moved to exclude the State's evidence on the basis that a prima facie case had not been established. Additionally, appellant requested the affirmative charge and filed a motion for a new trial, alleging that a prima facie case had not been made.
This case rests solely upon circumstantial evidence. Such evidence is entitled to the same weight as direct evidence provided it points toward guilt of the accused. Woods v. State, Ala.Cr.App., 344 So.2d 1225; Williams v. State, Ala.Cr.App.,348 So.2d 1142.
The evidence in this case points strongly to the guilt of the appellant. Four persons were working at Tuscumbia Drug Store on May 28, 1976. Each denied selling or giving the Ionamin capsules to Hatton. However, appellant was the only person in the store who acknowledged having had any transaction with Hatton that afternoon. Vicki Moultrie testified that when she saw Harold Hatton leave the store shortly after talking with the appellant, he carried a white paper bag. Appellant also stated that controlled drugs were kept in a stainless steel cabinet, to which only he had the combination. Whether or not this cabinet was locked at all times was a jury question. John Lawson, the other pharmacist, testified, however, that he was unaware that the cabinet contained these drugs. He testified that all prescription drugs were kept in the shelves behind the counter. On the morning of the audit by D.I.U. Agent McClellan, Lawson saw appellant bring from the back of the store eight or nine bottles of Ionamin. That audit, as set out above, showed a shortage of 17,406 Ionamin capsules. Appellant told McClellan he had no explanation for the shortage.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Hawkins v. State, 53 Ala. App. 89, 297 So.2d 813; Bass v.State, 55 Ala. App. 88, 313 So.2d 208; Jones v. State, Ala.Cr.App., 337 So.2d 116.
In Young v. State, 283 Ala. 676, 220 So.2d 843, the Supreme Court said:
 "Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state's evidence, the refusal to give the affirmative charge and overruling of a motion for new trial, does not constitute error."
The offense for which appellant was indicted is denounced by Alabama Code, 1940, recompiled 1958, cumulative supplement 1973, Title 22, Section 258 (47). That section states, in part, that, except as authorized by this chapter, any person who possesses, sells, furnishes, or gives away a controlled substance enumerated in schedules I through V is guilty of a felony and may be punished by not less than two nor more than fifteen years imprisonment and may also be fined not more than $25,000.00.
Appellant filed a motion to strike the indictment and a demurrer, basically contending that the indictment did not state an offense. These motions were denied. Upon the close of the State's case, as part of his motion to exclude, appellant alleged as grounds the following:
 "1. For that the State's evidence affirmatively shows that the Defendant is a pharmacist, now and at the time of the alleged commission of the act for which he is now being prosecuted, and was at said time, and is now, registered by the State Board of Pharmacy as a licensed pharmacist in the State of Alabama and that as such a pharmacist, it is not in violation of any of the laws of the State of Alabama for such Defendant to sell, furnish or give away phentermine, as charged in the indictment.
 "2. For that the State's evidence affirmatively shows that the Defendant is now and was at the time of the alleged offense charged in the indictment a duly licensed and registered pharmacist in the *Page 107 
State of Alabama and duly registered and licensed by the State Board of Pharmacy of the State of Alabama, and that as such it is not a violation of any of the laws of the State of Alabama for the Defendant to sell, furnish or give away phentermine as charged in the indictment.
 "3. For that the State's evidence in this cause has failed to show that the selling, furnishing, or giving away of phentermine by the Defendant is a violation of any of the laws of the State of Alabama, as charged in the indictment.
 "4. For that the State's evidence has failed to show that the phentermine is a controlled substance and that the selling, furnishing or giving away of phentermine by the Defendant is a violation of any of the laws of the State of Alabama as charged in the indictment."
It is urged by appellant that an offense against him could only be charged by an indictment under Alabama Code, 1940, recompiled 1958, Cum.Supp. 1973, Title 22, Section 258 (48)(a)(1). This section states that it is unlawful for any person who is subject to Article 3 of this Chapter to distribute or dispense a controlled substance in violation of Section 258 (46), (absent a prescription of a practitioner.)
Section 258 (46)(c), Ala. Code annotated, states the following:
 "(c) Except when dispensed directly by a practitioner, other than a pharmacy, to an ultimate user, a controlled substance included in schedule III or IV which is a prescription drug as determined under state board of health statute, shall not be dispensed without a written or oral prescription of a practitioner. The prescription shall not be filled or refilled more than 5 times, unless renewed by the practitioner."
Appellant's argument amounts to nothing more than a claim that being a registered pharmacist is an absolute defense to distribution or dispensing of controlled substances.
We hold that appellant's status as a pharmacist does not prevent the State from prosecuting him under Section 258 (47) of the Controlled Substances Act. Although Section 258 (48) uncontrovertedly delineates an offense which a pharmacist is capable of committing, he may likewise commit the offense delineated by Section 258 (47). It should be noted that this section begins with the comment "except as authorized by this chapter." Section 258 (46)(c) is applicable to Section 258 (47) as well as Section 258 (48). General statutory provisions yield to specific provisions where conflicts exist between the two.Cherokee County v. Cunningham, 260 Ala. 1, 68 So.2d 507; Connorv. State on Information of Boutwell, 275 Ala. 230,153 So.2d 787.
The existence of a prescription upon which the controlled substances were given by appellant to Hatton would amount to a defense to the offense charged. However, it was not incumbent upon the State to prove that appellant was not in this exception. Warren v. State, 52 Ala. App. 35, 288 So.2d 817, reversed on other grounds 292 Ala. 71, 288 So.2d 826. See also Alabama Digest, Drugs and Narcotics, 107.
Appellant also contends that results of the audit testified to by McClellan were erroneously admitted into evidence because, first, such evidence's only function was to show his bad character, and, secondly McClellan's testimony was violative of the best evidence rule.
This audit showed that 17,406 Ionamin capsules were disposed of in some manner other than by prescription over a period of approximately ten months. As such, this evidence was admissible to show the "complete story." Brantley v. State, 294 Ala. 344,317 So.2d 345. In that case possession of other drugs than the controlled substance which appellant was alleged to have sold was shown by the prosecution. This evidence was admissible as shedding light on intent to sell. Evidence of the audit findings accomplishes the same purpose here.
Additionally, McClellan's testimony concerning the results of the audit did not violate the Best Evidence Rule. An *Page 108 
exception to that rule exists where voluminous records are the written documents in question. McElroy's Alabama Evidence, 3rd Ed. Section 220-01. That section states:
 "It sometimes occurs that a fact to be proven requires an inspection and compilation of numerous and voluminous documents, such that inspection and compilation by a judge or jury at the trial would be unreasonable, impracticable or impossible. Under these circumstances, a qualified witness, who has made an examination of such documents, may state the result of his computations therefrom if, but only if, the documents are made available to the opponent for his inspection. The witness, therefore, may testify to his summary of voluminous records without having to produce the original or account for their loss."
All of appellant's records from which the audit was made were in court under a subpoena duces tecum at the time McClellan testified to the shortage of 17,406 Ionamin capsules from appellant's drugstore.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.