The appellant was convicted of attempting to traffic in cocaine. He was sentenced to life imprisonment in the penitentiary and was ordered to pay a fine of $250,000 and to pay $25 in victims' assessment.
 I
The appellant argues that there was insufficient evidence to support his conviction, because the State failed to prove any overt act toward the completion of the crime. The record indicates that the Police Department for the City of Tuscaloosa's West Alabama narcotic's unit, had been investigating Charles "Chuck" Means and Henry Lee Mitchell. On September 16, 1988, a meeting was set up with the two men to be held in a room at the Holiday Inn in Tuscaloosa. Police organized surveillance in an adjoining room. That evening, three black males, two of whom were identified as Mitchell and Means, arrived at the hotel in a large green car. Mitchell and Means entered the hotel room, and they discussed purchasing four ounces of cocaine from the undercover police officer, provided that a sample to be given them was "okay." The undercover police officers had previously been given a half gram of cocaine for sample purposes and three bags of fake cocaine for appearance purposes. Mitchell discussed obtaining a kilo of cocaine for $27,000, because he stated that he could "do" a kilo a week. Mitchell took a sample of the cocaine to "cook up" in order to make crack cocaine, and put it in a "wrapper-bag paper." Mitchell and Means left with the sample, indicating that they would be back within the hour if they were satisfied. The two men did not return that night.
An ABI narcotics agent testified that on October 5, 1988, he telephoned Mitchell and indicated that he had been the person with whom Mitchell had met at the hotel on September 16. He told Mitchell that he was presently in Louisiana and that he wanted to know if Mitchell and Means were still interested in doing business. Mitchell indicated that they were but stated that he would have to check with "the man." The agent gave Mitchell a price of $19,000 for a kilo of cocaine. Mitchell told the agent to check back the next day. The next morning, the agent telephoned Mitchell, and Mitchell indicated that he wanted 20 ounces of cocaine, stating that they were sometimes selling up to 15 ounces a day. He told the agent to call him back the next day. However, when the agent called the next day, Mitchell stated that "the man" was unavailable, and he told the agent to call again, which the agent did; however, "the man" was still unavailable.
On October 12, 1988, the agent again called Mitchell, who stated that everybody was ready to deal. Approximately two weeks later, the agent called Mitchell and told him that he was coming to town. Mitchell stated that the sample that they had gotten on September 16 had been cooked up and had been found to be okay. He stated that, however, the "main man" had come into town with a kilo, so that they did not need the cocaine at that time. Mitchell then told the agent to call him back.
On November 3, 1988, the agent called Mitchell, who informed him that "the man" wanted a kilo of cocaine. The agent called back an hour later, and Mitchell stated that he had spoken with "the man" and gave Mitchell a telephone number by which he could reach an automatic pager and told him to call the number and ask for Charlie. At approximately 6:30 p.m., Charlie returned the call and asked for a sample to test. The agent told him that he would have to see the money. The agent then called the police narcotics office and indicated that a kilo was wanted. The officer *Page 35 
then called Charlie, who stated that his partner was present. During the conversation, the appellant got on the telephone and stated that they wanted a sample. The agent told the appellant that he needed to see the money and instructed them to go to Hardee's and meet with Paul, because if Paul liked the money, they would make a deal. Charlie and the appellant indicated to the agent that they had liked the first sample.
Charlie and the appellant did not bring the money with them to the meeting at Hardee's. They indicated that they were nervous, and Paul, agent Paul Johnson, offered them another sample. Therefore, a second meeting was arranged, during which Paul gave Charlie and the appellant a sample, and the men indicated that it would take approximately 15 minutes to "cook up" the cocaine. Paul telephoned the automatic pager number approximately 15 minutes later, and the men indicated that the sample was good and that they wanted the "whole thing." Paul told them to come to the Holiday Inn and to bring the money; he further told them that he would check out the money and then bring one of the men into the room while the other man stayed outside with the money. Approximately 10 minutes later, Charlie and the appellant drove into the Holiday Inn parking lot with $18,000. The appellant accompanied the officer into the motel room, while Charlie stayed in the car with the money. Once inside the motel, the appellant was arrested and Charlie was arrested immediately thereafter.
"A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense." Section 13A-4-2,Code of Alabama 1975.
 "The authorities have found it impossible to formulate a precise rule or definition of what constitutes an attempt which may be applied as a test in all cases. Each case must necessarily be decided by its own facts with the assistance of general guiding principles. Too, much depends upon the substantive criminal law germane to the particular crime intended. An attempt necessarily lies somewhere between mere intent, which alone is not punishable, and the completed offense. Thus, the courts frequently have talked of attempt as requiring more than preparation, or requiring a 'direct ineffectual act towards its [the crime] commission.' E.g., People v. Miller, [2 Cal.2d 527] 42 P.2d 3081 [308] (Cal. 1935) (never lifting loaded rifle so as to take aim insufficient attempt to murder). 'Preparation consists in arranging the means or measures necessary for the commission of the offense; the attempt is the overt movement towards the commission after preparations are made. It must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter.' Miller, supra. Remote preparatory acts reasonably in a chain of causation do not constitute an attempt. Huggins v. State, 41 Ala. App. 548, 142 So.2d 915, cert. denied, 273 Ala. 708, 142 So.2d 918 (1962)."
Commentary, § 13A-4-2, Code of Alabama 1975.
By driving to the hotel with the purchase money and walking into the hotel room in which the cocaine was to be obtained, the appellant performed an overt act towards the commission of the offense after the preparations were made. Thus, the State presented sufficient evidence to support the appellant's conviction.
 II
The appellant argues that the trial court erred in denying his motion to suppress his statement, which was made after his arrest and after Miranda warnings were given, because the police had provided him with a sample of cocaine which he allegedly had ingested 35 minutes prior to his arrest. Therefore, he contends that he was intoxicated by the cocaine at the time of his arrest and his statement was involuntary. He alleges that he does not remember being given his Miranda
rights or making any statements. The State presented the testimony of an ABI narcotics *Page 36 
agent who stated that, at the time of the appellant's arrest, the appellant did not appear to be under the influence or impaired. He testified that the appellant was coherent and seemed to understand the officers. An employee of the West Alabama narcotics squad testified that he read the appellant his Miranda rights upon his arrest. He testified that the appellant indicated that he understood those rights. He testified that he observed the appellant for approximately five minutes and that the appellant did not behave as if he were on cocaine. Paul Johnson, the ABI agent who accompanied the appellant into the hotel room where he was arrested, testified that he could understand the appellant and that no one coerced the appellant into making the statement or offered him any promises or inducement in return for his statement.
 "The trial court properly determined that the defendant's confessions were voluntary. '[U]nless intoxication, in and of itself, so impairs a defendant's mind that he is "unconscious of the meaning of his words," the fact that the defendant was intoxicated at the time he confessed is simply one factor to be considered when reviewing the totality of the circumstances surrounding the confession.' Carr v. State, 545 So.2d 820, 824
(Ala.Cr.App. 1989). 'The intoxicated condition of an accused when he makes a confession, unless it goes to the extent of mania, does not affect the admissibility in evidence of the confession, but may affect its weight and credibility.' Callahan v. State, 557 So.2d 1292, 1300 (Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala. 1989)."
White v. State, [Ms. 8 Div. 473, Aug. 24, 1990] (Ala.Cr.App. 1990). There is no indication in the record that the appellant was intoxicated to the extent that he could not comprehend the meaning of his words. Therefore, the appellant's drug use was a circumstance to be considered by the jury, rather than a factor which would affect the admissibility of his statement.
 III
The appellant alleges that his rights to due process were violated in that the officers, before making the sale to him, gave him a sample of cocaine, knowing that he would smoke it. The appellant argues that the officers' conduct in allowing him to sample the cocaine constituted the type of "outrageousness" necessary to have the officers' conduct held illegal as a violation of due process pursuant to the fundamental fairness doctrines of the Fifth and Fourth Amendments to the United States Constitution. " 'To be so "outrageous" as to effect a denial of due process, government enforcement techniques must be "fundamentally unfair" or "shocking to the universal sense of conscious," United States v. Russell, 411 U.S. 423, 432,93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); United States v.Mulherin, 710 F.2d 731 (11th Cir.), cert. denied, 464 U.S. 964,104 S.Ct. 402, 78 L.Ed.2d 343 (1983).' United States v.Andrews, 765 F.2d 1491, at 1498 n. 4 (11th Cir. 1985)." Wrightv. State, 494 So.2d 936, 939 (Ala.Cr.App. 1986).
 " 'The limitations of the Due Process Clause of the Fifth Amendment come into play only when the government activity in question violates some protected right of the defendant. Here . . . the police, the government informant, and the defendant acted in concert with one another. . . . If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law.' Hampton v. United States, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976). The police conduct here, as in Hampton, did not deprive the defendant of any right secured to her by the United States Constitution."
Id. (Emphasis in original.) There is no indication that any action by the police violated some protected right of the appellant, and, therefore, by acting in concert with the appellant's illegal conduct, the police did not commit any misconduct or meet the stringent standard of "outrageous" governmental conduct. United States v. Andrews, supra; UnitedStates v. Gray, 626 F.2d 494, 498 (5th Cir. 1980), cert. denied, 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981). *Page 37 
 IV
The appellant argues that the trial court improperly sentenced him to life pursuant to § 13A-12-203, Code of Alabama
1975, for the attempt to traffic in cocaine, because the indictment had alleged a violation of attempt pursuant to §13A-4-2, Code of Alabama 1975. The indictment charged the appellant with attempting to traffic in cocaine as follows:
 "The Grand Jury of said County charge that before the finding of this Indictment, ROBERT EARL HARRIS, alias ROBERT E. HARRIS, alias ROBERT HARRIS, alias 'JAP,' whose name is otherwise unknown to the Grand Jury, did, with the intent to commit the crime of Trafficking in Cocaine, on, to-wit: November 3, 1988, in violation of Section 13A-12-231 of the Code of Alabama, attempt to unlawfully possess a controlled substance, to-wit: cocaine or of any mixture containing cocaine, in a quantity of 2.2 pounds or more, but less than 22 pounds, in violation of Section 13A-4-2 of the Code of Alabama."
The appellant was sentenced pursuant to § 13A-12-203, Code ofAlabama 1975, which provides as follows:
 "(a) A person is guilty of an attempt to commit a controlled substance crime if he engages in the conduct defined in section 13A-4-2(a), and the crime attempted is a controlled substance crime.
 "(b) The principles of liability and defenses for an attempt to commit a controlled substance crime are the same as those specified in sections 13A-4-2(b) through (c), and in section 13A-4-5.
 "(c) An attempt to commit a controlled substance crime shall be punished the same as the controlled substance crime attempted."
The appellant was properly sentenced pursuant to §13A-12-203, Code of Alabama 1975, as he was properly convicted of the crime of the attempt to commit a controlled substance crime.
 "A basic principle of statutory construction is that a general statute yields to a specific statute where there is a conflict between the two. See Murphy v. City of Mobile, 504 So.2d 243
(Ala.Cr.App. 1987); Chesteen v. State, 365 So.2d 102 (Ala.Cr.App. 1978). The legislative history shows that both § 20-2-162 and 13A-12-212 were enacted on July 23, 1987.
 " 'Another well-settled canon of statutory construction is that statutes relating to the same subject, and adopted at the same time as constituting one system of law, will be construed in pari materia so as to effectuate the legislative intent, giving each, where it is reasonably possible to do so, a field of operation.'
 "Coan v. State, 224 Ala. 584, 585, 141 So. 263
(1932).
". . . .
 " 'A statute making it a crime to attempt to commit an offense is intended to be of a general nature punishing all attempts to commit any crime, and it has been held to apply only where there is no other specific provision of law, punishing such attempt.' Id. [McDavid v. State, 439 So.2d 750] at 752 [Ala.Cr.App. 1983], quoting from 22 C.J.S. Criminal Law, Section 74, p. 227 (1961)."
Mack v. State, 536 So.2d 971, 972-73 (Ala.Cr.App. 1988). The legislative intent is clear that § 13A-12-203 was enacted to provide the exclusive remedy for the attempt of a controlled substance crime.
It is also noteworthy that, during the sentencing hearing, the prosecutor pointed out that the appellant had been on notice since the day of his arraignment that, if convicted, he would be sentenced, pursuant to § 13A-12-203.
Moreover, the indictment was not fatally defective for failing to cite § 13A-12-203. Clearly, this Code section states that the elements of attempt, contained in § 13A-4-2, Code ofAlabama 1975, are controlling and cites that statute when stating the elements of the offense of attempt to commit a controlled substances crime under § 13A-12-203. "[A] code section is not an essential element of the statement of the offense in an indictment." Talley v. City of Clanton,495 So.2d 1165, 1167 (Ala.Cr.App. 1986). The indictment in the present case showed the appellant what *Page 38 
to defend against; identified the offense so that he was tried for the same charge which was brought before the grand jury; tended to protect against double jeopardy; and gave the court the means to accept or reject the verdict, pronounce judgment, and pass sentence. Id., citing Baker v. State, 472 So.2d 700,702 (Ala.Cr.App. 1985); Bowens v. State, 54 Ala. App. 491,309 So.2d 844 (1974); cert. denied, 293 Ala. 746, 309 So.2d 850
(Ala. 1975); Sanders v. State, 278 Ala. 453, 179 So.2d 35
(1965).
 V
The appellant argues that the trial court amended the indictment without his consent, because he was sentenced under § 13A-12-203, rather than § 13A-4-2. He argues that because he was sentenced under the former Code section rather than the latter Code section, which was cited in the indictment, the indictment was thereby amended. The appellant failed to object on this ground at trial, however, and is therefore precluded from raising this matter on appeal. Hardy v. State,455 So.2d 265 (Ala.Cr.App. 1984).
 VI
The appellant argues that the indictment would not support a verdict in that it failed to allege any specific overt act which was allegedly committed by him in furtherance of the intended offense. The appellant argues that, because the indictment failed to state the overt act, he was left unaware of the nature of the charge against him. "An indictment which follows the language of the statute is sufficient to apprise the appellant of the charges against him, and to allow him to prepare a defense." Copeland v. State, 455 So.2d 951, 956
(Ala.Cr.App. 1984), writ denied, 455 So.2d 956 (Ala. 1984). "[I]t should be borne in mind that under our system of pleading, indictments are rather a statement of legal conclusions, than of facts." Hochman v. State, 265 Ala. 1, 3,91 So.2d 500, 501 (Ala.), cert. stricken, 265 Ala. 404,91 So.2d 502 (Ala. 1956). "We are unable to see how the offense could have been more specifically described without pleading evidentiary facts, and, as has been often held, 'it is not required that an indictment set up the proof necessary to a conviction.' " Hochman v. State, 265 Ala. at 3,91 So.2d at 502. Thus, the indictment against the appellant clearly stated an offense of which he could be convicted.
AFFIRMED.
All Judges concur except BOWEN, J., concurs in result with opinion.